**Samuel A. Diddle ISB #4967**
**David M. Swartley, ISB #5230**
EBERLE, BERLIN, KADING, TURNBOW
    & McKLVEEN, CHARTERED
1111 West Jefferson Street, Suite 530
Post Office Box 1368
Boise, Idaho 83701
Telephone: (208) 344-8535
Facsimile: (208) 344-8542

*Attorneys for Creditor Assemblies of God Loan Fund*

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 13-20025-TLM |
| **NEW HOPE ASSEMBLY OF GOD, INC.,** | **Chapter 11** |
| Debtor. | **AFFIDAVIT OF AMY L. BOWLES IN SUPPORT OF MOTION FOR TERMINATION AND ANNULMENT OF STAY BY ASSEMBLIES OF GOD LOAN FUND** |

STATE OF IDAHO   )
             ) ss.
Count of Ada     )

AMY L. BOWLES, being duly sworn upon oath, deposes and says:

1.     That I am an Assistant Trustee Officer with Pioneer Lender Trustee Services. In such capacity I have personal knowledge of all matters stated herein.

2.     Attached hereto as Exhibit "A" and incorporated herein by this reference is a true and correct copy of the Deed of Trust, Assignment of Leases and Rents and Security Agreement recorded June 17, 2009, as Instrument No. 452157 in the records of the Shoshone County Recorder's Office.

**AFFIDAVIT OF AMY L. BOWLES IN SUPPORT OF MOTION FOR TERMINATION AND ANNULMENT OF STAY - 1**
(12014-2 / 00437807.000)

3.      Attached hereto as Exhibit "B" and incorporated herein by this reference is a true and correct copy of the Notice of Default recorded August 31, 2012, as Instrument No. 468890 in the records of the Shoshone County Recorder's Office.

4.      Attached hereto as Exhibit "C" and incorporated herein by this reference is a true and correct copy of the Notice of Trustee's Sale I personally prepared and noticed for January 11, 2013, at 11:00 a.m. at First American Title Company, 111 Main St., Kellogg, Idaho.

5.      Attached hereto as Exhibit "D" and incorporated herein by this reference is a true and correct copy of the Trustee's Deed from the Trustee's Sale held January 11, 2013, at 11:00 a.m. at First American Title Company, 111 Main St., Kellogg, Idaho.  At the time that I had the Deed of Trust recorded I had no knowledge that a bankruptcy action had begun.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

DATED this 22nd day of April, 2013.

Amy L. Bowles

STATE OF IDAHO   )
                 ss.
County of Ada    )

SUBSCRIBED AND SWORN to me this 23 day of April, 2013.

NOTARY PUBLIC FOR IDAHO
Residing at: Boise, ID
My Commission Expires: 4/18/14

AFFIDAVIT OF AMY L. BOWLES IN SUPPORT OF MOTION FOR TERMINATION AND
ANNULMENT OF STAY - 2
(12014-2 / 00437807.000)

6848

RECORDING REQUESTED BY AND
UPON RECORDATION RETURN TO:

Assemblies of God Loan Fund
Post Closing
1661 North Boonville Avenue, Suite I
Springfield, MO 65803

452157

# DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT ("Security Instrument"), effective June 17, 2009, by NEW HOPE ASSEMBLY OF GOD, INC., an Idaho nonprofit corporation, ("Borrower"), whose address is 1008 South Division Street, Pinehurst, Idaho 83850, to RUDY L. PATRICK, ("Trustee"), whose address is 2399 South Orchard Street, Suite 204, Boise, Idaho 83705, in favor of ASSEMBLIES OF GOD LOAN FUND, a Missouri nonprofit corporation ("Lender"), whose address is 1661 North Boonville Avenue, Springfield, Missouri 65803.

## GRANTING CLAUSE

Lender is making a loan to Borrower in the total amount of TWO HUNDRED ONE THOUSAND AND 00/100 DOLLARS ($201,000.00) (the "Loan"). In consideration of the Loan, Borrower hereby grants and conveys to Trustee, his successors and assigns in trust, with power of sale and right of entry and possession as provided below, all of its present and future estate, right, title and interest in and to the property now or hereafter acquired as described on Exhibit "A" attached hereto and incorporated herein (the "Property") and all minerals, oil, gas and other hydrocarbon substances on or under the surface of the Property, as well as all development rights, permits, licenses, air rights, water, water rights, and water stock relating to the Property.

All present and future structures, buildings, improvements, appurtenances and fixtures of any kind on the Property, all apparatus, equipment and appliances used in connection with the operation or occupancy of the Property, such as heating and air-conditioning systems and facilities used to provide any utility services, refrigeration, ventilation, laundry, drying, dishwashing, garbage disposal, recreation or other services on the Property, and all window coverings, drapes and rods, carpeting and floor coverings, it being intended and agreed that all such items will be conclusively considered to be part of the Property conveyed by this Security Instrument, whether or not attached or affixed to the Property ("Improvements").



EXHIBIT
4

452157

All appurtenances of the Property and all rights of Borrower in and to any streets, roads or public places, easements or rights of way, relating to the Property.

All of the rents, royalties, profits and income of the Property ("Rents"), and all rights of Borrower under all present and future leases affecting the Property, including but not limited to any security deposits.

All proceeds and claims arising on account of any damage to or taking of the Property or any Improvements thereon or any part thereof, and all causes of action and recoveries for any loss or diminution in the value of the Property or any Improvements.

TO HAVE AND TO HOLD the Property, with all privileges and appurtenances thereunto belonging, to Trustee, his heirs, successors and assigns forever, upon the trusts, terms and condition, and for the uses hereinafter set forth..

## SECURED OBLIGATIONS

This Security Instrument secures the following obligations ("Obligations"):

A.    **LOAN**.  Payment and performance of Borrower's indebtedness and obligations under that certain Adjustable Rate Secured Note of even date herewith in the amount of TWO HUNDRED ONE THOUSAND AND 00/100DOLLARS ($201,000.00) (the "**Note**"), including all extensions, renewals and modifications of the Note, and any additional note or notes.

The payment of the principal and interest on all other future loans or advances made by Lender to Borrower (or any successor in interest to Borrower as the owner of all or any part of the Property) when the note evidencing such loan or advance specifically states that it is secured by this Security Instrument ("**Future Advances**"), including all extensions, renewals and modifications of any Future Advances.

B.    **OTHER OBLIGATIONS**.  The payment and performance of Borrower's obligations under this Security Instrument.  The payment of all sums advanced or paid out by Lender under or pursuant to any provision of this Security Instrument or to protect the security of this Security Instrument, together with interest thereon as provided herein.

C.    **MATURITY**,  The Note secured hereby matures on July 15, 2034.

## WARRANTY OF TITLE

Borrower warrants and covenants that, except as Borrower lawfully possesses, and holds fee simple title to the Property without limitation on the right to encumber, and that this Security Instrument is a valid first and priority lien on the Property subject only to the encumbrances set forth in Schedule B-1 of the title insurance policy issued in favor of Lender insuring such lien.  Borrower, at its sole cost and expense, shall at all times keep, protect, defend, and maintain title to the Property free and clear of any liens or encumbrances that would or could impair the validity or priority of this Security Instrument.

452157

## ARTICLE 1
## COVENANTS OF BORROWER

To protect the security of this Security Instrument, Borrower agrees:

**1.1.** **Performance.** Borrower agrees to pay all indebtedness and perform all obligations that are secured by this Security Instrument in accordance with their terms.

**1.2.** **Insurance.** Borrower shall maintain or cause to be maintained in force, until full payment of the Loans, policies of insurance satisfactory to Lender as follows: (a) fire and extended coverage insurance, including loss or damage by vandalism, malicious mischief, and such other insurable hazards as Lender shall reasonably require. The amount of such insurance shall be satisfactory to Lender and shall be equal to the greater of the amount of the Loans or 100% of the full replacement cost of the improvements, based on the insurer's agreed value under a full replacement cost endorsement without co-insurance. "Full replacement cost," as used herein, means the cost of replacing the improvements, exclusive of the cost of excavation, foundations, and footings; (b) all furniture, fixtures, and equipment necessary for the operation of the Improvements shall be insured against loss by burglary, theft, or mysterious disappearance; (c) flood insurance, in the event the improvements are located within a 100-year flood plain and such insurance is available pursuant to the provisions of the Flood Disaster Protection Act of 1973 or other applicable legislation; (d) comprehensive general liability insurance, including explosion and collapse coverage, covering personal injury and property damage with adequate coverage; (e) while any persons are employed by Borrower, workers' compensation and employer's liability insurance and other insurance required by law; and (f) to the extent available, business interruption insurance of twelve (12) month terms. Each policy of insurance shall be issued by a company approved by Lender and qualified to do business in the state where the Property is located. All premiums on insurance policies shall be paid, by Borrower making payment, when due, directly to the carrier, or in such other manner as Lender may designate in writing.

All insurance policies and renewals thereof shall be in a form acceptable to Lender. Lender shall have the right to hold the policies, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. At least thirty (30) days prior to the expiration date of a policy, Borrower shall deliver to Lender a renewal policy in form satisfactory to Lender.

**1.3.** **Assignment of Proceeds.** All insurance proceeds on the Property, all proceeds of a sale of all or any portion of the Property, and all causes of action, claims, compensation, awards and recoveries for any damage, condemnation or taking of all or any part of the Property or for any damage or injury to it or for any loss or diminution in value of the Property, are hereby assigned to and shall be paid to Lender. At Lender's option, Lender may appear in and prosecute (either in its own name or in the name of Borrower) or participate in any suits or proceedings relating to any such proceeds, causes of actions, claims, compensation, awards or recoveries and may adjust, compromise or settle any claim in connection therewith. Lender shall apply any sums received by it under this Section 1.3 first to the payment of all of its reasonable costs and expenses (including but not limited to legal fees and disbursements) incurred in obtaining those sums, and then, in its absolute discretion and without regard to the adequacy of its security, to the payment of the indebtedness and obligations secured by this Security Instrument, except as provided in Section 1.10 below. Any application of such funds to the indebtedness secured hereby shall not be construed to cure or waive any Event of Default or invalidate any acts of Lender arising out of such Event of Default.

452157

1.4.   **Taxes and Assessments.** Borrower agrees to pay when due all taxes, fees, impositions, and assessments which are or may become a lien on all or any portion of or interest in the Property or which are assessed against the Property or its rents, royalties, profits and income. Borrower also agrees to pay when due all lawful claims and demands of mechanics, materialmen, laborers and others for any work performed or materials delivered with respect to the Property. In the event of the passage after the date of this Security Instrument of any law of the state where the Property is located, deducting from the value of land, for the purpose of taxation, any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or debts secured by deeds of trust for state or local purposes or the manner of the collection of such taxes so as to affect this Security Instrument, the entire principal balance under said Note, together with all accrued interest thereon, at the option of Lender, without demand or notice, forthwith shall become due and payable; provided, however, that such option shall be ineffective if Borrower is permitted by law to pay the whole of such tax, in addition to all other payments required hereunder, and, if prior to such specified date, Borrower does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall constitute a modification of this Security Instrument.

1.5.   **Perfection of Security.** Borrower agrees to execute and deliver to Lender, from time to time on demand and at Borrower's cost and expense, any documents required to perfect and continue the perfection of Lender's interest in the Property.

1.6.   **Acceleration.** Without the prior written consent of Lender (which consent may be withheld in Lender's sole and absolute discretion), Borrower shall not sell, encumber, assign, contract to sell, grant an option to sell, lease, or otherwise transfer or convey the Property or any portion thereof or interest therein or suffer its title therein to be divested whether voluntarily, by operation of law or otherwise, and Borrower shall not dissolve, cease doing business or terminate its existence. If such an event occurs without Lender's prior written consent, Lender may, in its sole option and upon written notice to Borrower, accelerate the maturity date of the sums secured hereby and declare all such sums immediately due and payable.

1.7.   **Waste; Changes in Zoning; Subdivision.**

1.7.1.   Borrower (a) shall not commit waste or permit impairment or deterioration of the Property or take any actions that might invalidate any insurance carried on the Property, (b) shall not abandon the Property, (c) shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (d) shall keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon in good repair and shall replace fixtures, equipment, machinery and appliances on the Property when necessary to keep such items in good repair, (e) shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property, and (f) shall give notice in writing to Lender of and, unless otherwise directed in writing by Lender, appear in and defend any action or proceeding purporting to affect the Property, the security of this Security Instrument or the rights or powers of Lender. Lender shall have the right, but not the obligation, to enter upon and take possession of the Property and to make additions, alterations, repairs, or improvements to the Property which Lender may consider necessary or proper to keep the Property in good condition and repair. No Improvements may be removed, demolished or materially altered without the prior written consent of Lender, which Lender may withhold in its sole and absolute discretion. No personal property in which Lender has a security interest may be removed from the Property unless it is immediately replaced by similar property of at least equivalent value on which Lender will immediately have a valid first lien and security interest.

452157

1.7.2.   Without the prior written consent of Lender, which Lender may withhold in its sole and absolute discretion, Borrower shall not seek, make or consent to any change in the zoning or conditions of use of the Property. Borrower, at its sole cost, shall comply with and make all payments required under the provisions of any covenants, conditions or restrictions affecting the Property, including but not limited to those contained in any declaration and constituent documents of any condominium, cooperative or planned development project on the Property. Borrower, at its sole cost, shall comply with all existing and future requirements of all governmental authorities having jurisdiction over the Property.

1.7.3.   If this Security Instrument covers a subdivision or common interest development ("Subdivision"), as defined under any law of the state where the Property is located which relates to the development or sale of a "common interest development" or a "subdivision," Borrower shall obtain, comply with and keep in effect all present and future permits, maps, bonds and other agreements required by applicable laws and regulations for the lawful construction or sale of the Subdivision lots and/or units. Borrower must also maintain an active sales program for the Subdivision, and always be in a position to convey insurable title to the lots and/or units to purchasers.

1.8.   **Books and Records.**

1.8.1.   Borrower shall keep adequate books and records of account of the Property and its own financial affairs on a cash basis sufficient to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles. Lender shall have the right to examine, copy and audit Borrower's records and books of account at all reasonable times. If the Property is at any time used for commercial or residential income purposes, Borrower will deliver to Lender, upon request, certified financial statements and profit-and-loss statements for Borrower and the Property prepared in accordance with generally accepted accounting principles.

1.8.2.   Borrower will promptly furnish from time to time, upon Lender's request, a duly acknowledged written statement setting forth all amounts due on the indebtedness secured by this Security Instrument and stating whether any offsets or defenses exist, and containing such other matters as Lender may reasonably require.

1.9.   **Defend Security.**  Borrower shall, at its own expense, appear in and defend any action or proceeding that might affect Lender's security or the rights or powers of Lender or that purports to affect any of the Property. If Borrower fails to perform any of its covenants or agreements contained in this Security Instrument or any of the other Loan Documents, or if any action or proceedings of any kind (including but not limited to any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding) is commenced which might affect Lender's interest in the Property or Lender's right to enforce its security, then Lender and/or Trustee may, at their option, make any appearances, disburse any sums and take any actions as may be necessary or desirable to protect or enforce the security of this Security Instrument or to remedy the failure of Borrower to perform its covenants, including without limitation payment on behalf of Borrower of any taxes, assessments, liens, insurance premiums, and repair or maintenance costs (without, however, waiving any default of Borrower). Borrower agrees to pay all reasonable out-of-pocket expenses of Lender and Trustee thus incurred (including but not limited to fees and disbursements of counsel). Any sums disbursed or advanced by Lender or Trustee shall be additional indebtedness of Borrower secured by this Security Instrument and shall be payable by Borrower upon demand. Any such sums so disbursed or advanced by Lender shall bear interest at the Default Rate as set forth in the Note, and any such sums so disbursed or advanced by Trustee shall bear interest at the maximum rate permitted to be charged by Trustee under applicable law. This Section 1.9

452157

shall not be construed to require Lender or Trustee to incur any expenses, make any appearances, or take any other actions.

**1.10.** **Damage and Destruction.**

**1.10.1.** If the Property, or any portion thereof, is destroyed (in whole or in part), or is damaged by fire or other casualty, Borrower shall be obligated to continue to pay the Loans. Borrower shall give Lender prompt written notice of any such destruction or damage in excess of Ten Thousand Dollars ($10,000.00).

**1.10.2.** Prior to the termination of this Security Instrument, the proceeds from any insurance resulting from any events described in the preceding Section less all expenses related thereto (the **"Net Proceeds"**)shall be deposited in a trust fund to be known as the "Insurance Proceeds Fund". All Net Proceeds shall be applied in one or more of the following ways, as elected by Borrower in a written notice to Lender.

**1.10.2.1.** To the prompt repair, restoration, modification or improvement of the Property by Borrower, upon receipt by Lender of written request on applicable forms for each draw request accompanied by supporting invoices, statements, bills and approved construction draw form, signed by an officer or individual authorized to make draw requests on behalf of the Borrower; or

**1.10.2.2.** Toward the purchase of additional property, against which Borrower shall give a first lien to Lender; or

**1.10.2.3.** To the prepayment of the Loan in the same manner as partial prepayments are to be applied under the provisions of the Note, but without any premium or penalty; or

**1.10.2.4.** A combination of these purposes.

Any balance of the Net Proceeds remaining shall be paid to Borrower.

**1.10.3.** If the Net Proceeds are insufficient to pay in full the costs of the repair, restoration, modification or improvement required hereunder, Borrower will nevertheless complete the work so that the Property is in substantially the same condition as existed prior to such damage or destruction, or is in a condition of at least equivalent value and function, and Borrower will pay any cost in excess of the amount of the Net Proceeds held by Lender. Lender shall not be required to confirm the availability of such excess.

When Borrower has complied with all of the preceding portions of this Section 1.10, Lender may condition disbursement of the sums specified in subsection 1.10.3 above to Borrower on terms and conditions such as those governing disbursements of loan funds in construction loans made by Lender for similar properties.

**1.11.** **Condemnation.**

**1.11.1.** If title to all, or substantially all, of the Property shall be taken or condemned by competent authority for any public use or purpose, the gross amount awarded, less all attorneys' fees and other expenses and costs in the condemnation proceeding (the "Net Condemnation Award") shall be applied to the prepayment of the Loan in the same manner as partial prepayments are to be applied under the provisions of the Note. Any balance of the Net Condemnation Award shall be paid to Borrower. In the event the Net Condemnation Award shall be insufficient to pay in full the amount necessary to pay all

452157

outstanding principal, interest, Lender's fees and other costs applicable to the Loans, Borrower shall pay the amount of any such deficiency.

    **1.11.2.** If less than substantially all of the Property shall be taken or condemned by competent authority for any public use or purpose, neither the term nor any of the obligations of Borrower under this Security Instrument shall be affected or reduced in any way.

        **1.11.2.1.** If any part of the Property is taken, Borrower shall proceed to repair, replace, restore or rebuild the remaining parts so that the Property is in substantially the same condition as immediately prior to such condemnation or is in a condition of at least equivalent value and function.

        **1.11.2.2.**      The entire Net Condemnation Award, less expenses, shall be paid to the Borrower for use in repairing, restoring replacing and rebuilding as provided hereinabove. Said Award shall be transferred to the Borrower in the same manner as insurance proceeds are made available. If the Net Condemnation Award is less than the amount necessary for the Borrower to repair, replace, restore and rebuild, as set forth hereinabove, Borrower shall nevertheless complete the repair, replacement, restoration or rebuilding and pay the costs thereof. Lender shall not be required to confirm the availability of such excess.

        **1.11.2.3.** If the Net Condemnation Award is in excess of the amount necessary to repair, replace, restore and rebuild, such excess shall be paid to Lender to be applied to (i) the prepayment of the Loan in the same manner as partial prepayments are to be applied under the provisions of the Note, (ii) purchase of additional property against which Borrower shall give a first lien to Lender, or (iii) to construct additional improvements on the Property remaining under the lien. The Borrower has the right to select which of the above and foregoing alternatives it desires to exercise, and shall notify Lender, in writing, which alternative is selected by Borrower.

        **1.11.3.** Borrower shall be obligated to continue to make all payments required hereunder pending any such condemnation proceeding, and thereafter unless the Loans are paid in full.

        **1.11.4.** Lender is authorized to join in and consent to deeds in lieu of condemnation as requested by Borrower upon receipt of a copy of the written agreement between the condemning authority and the Borrower.

    **1.12.** **Security Agreement and Fixture Filing.** This Security Instrument is intended to be and shall constitute a security agreement as defined in the Uniform Commercial Code, the Borrower being the Debtor and the Beneficiary being the Secured Party. Borrower hereby grants Beneficiary a security interest in any items of personal property described in Exhibit "B" attached hereto which are not herein effectively made a part of the real property, for the purpose of securing all indebtedness and other obligations of Borrower now or hereafter secured by this Security Instrument. Borrower agrees to execute and deliver financing and continuation statements covering said property from time to time in such form as Beneficiary may require to perfect and continue the perfection of Beneficiary's security interest with respect to said property, and to reimburse Beneficiary for any costs incurred in filing such financing statements and any continuation statements. Borrower shall not create or allow the creation of any other security interest in said property. Upon the occurrence of any default by Borrower hereunder, Beneficiary shall have the rights and remedies of a secured party under the Uniform Commercial Code, as well as all other rights and remedies available at law or in equity or as provided herein, all at Beneficiary's option. Borrower and Beneficiary agree that the filing of a financing statement in the records normally having to do with personal property shall never be construed as in any way derogating from or impairing this declaration and the hereby stated intention of the parties hereto that everything used in connection with the operation or occupancy of said property or the production of income

452157

therefrom is and, at all times and for all purposes and in all proceedings, both legal and equitable, shall be regarded as real property encumbered by this Security Instrument, irrespective of whether (a) any such item is physically attached to the buildings and improvements, (b) serial numbers are used for the better identification of certain equipment, or (c) any such item is referred to or reflected in any such financing statement so filed at any time. Such mention in the financing statement is declared to be for the protection of the Beneficiary in the event any court or judge shall at any time hold that notice of Beneficiary's priority of interest must be filed in the Uniform Commercial Code records to be effective against a particular class of persons, including, but not limited to, the federal government any subdivision or entity of the federal government.

### 1.13. <u>Compensation; Exculpation; Indemnification.</u>

**1.13.1.** Borrower hereby agrees to indemnify Trustee and Lender against, and holds them harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys fees and other legal expenses, cost of evidence of title, cost of evidence of value, and other expenses which either may suffer or incur (a) by reason of this Security Instrument; or (b) by reason of the execution of this trust or in performance of any act required or permitted hereunder or by law; or (c) as a result of any failure of Borrower to perform Borrower's obligations; or (d) by reason of any alleged obligation or undertaking on Lender's part to perform or discharge any of the representations, warranties, conditions, covenants or other obligations contained in any other document related to the Property. Notwithstanding the foregoing, Borrower shall not be liable under this subsection 1.13.1 to the extent that Borrower establishes that such liability is attributable solely and directly to the gross negligence or willful misconduct of Trustee or Lender.

**1.13.2.** Borrower shall pay all indebtedness arising under this Section 1.13 immediately upon demand by Lender together with interest thereon from the date the indebtedness arises at the Default Rate of interest set forth in the Note (after giving effect to any notice and/or cure periods). Borrower's duty to indemnify Lender shall survive the release and cancellation of the Obligations and the release and reconveyance or any partial release or reconveyance of this Security Instrument.

## ARTICLE 2
## EVENTS OF DEFAULT

**2.1** **List of Events of Default.** An Event of Default shall have occurred under this Security Instrument upon the occurrence of any of the following:

**2.1.1.** Borrower fails timely to make any payment required by the Note, any future advances, or any of the other Loan Documents; or

**2.1.2.** Borrower breaches any warranty or fails to perform any other covenant contained in this Security Instrument or any of the other Loan Documents, and does not cure that failure within the period of time, if any, that Lender may elect in its sole discretion to grant in writing to Borrower to cure that failure; or

**2.1.3.** If any representation or warranty of Borrower or of its members, general partners, principals, affiliates, agents or employees, or of any Guarantor or Indemnitor, if any, made herein or in the Indemnity or in any other Loan Document, in any guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Lender shall have been false or misleading in any material respect when made; or

452157

2.1.4.  If Borrower or any Guarantor or any Indemnitor, if any, shall make an assignment for the benefit of creditors or if Borrower or any Guarantor or Indemnitor shall admit in writing its inability to pay, or Borrower's or any Guarantor's or any Indemnitor's failure to pay its debts as they become due; or

2.1.5.  If (i) Borrower or any subsidiary or general partner or member of Borrower, or any Guarantor or any Indemnitor, if any, shall commence any case, proceeding or other action (A) under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization, conservatorship or relief of debtors, seeking to have an order for relief entered with respect to it, or seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to it or its debts, or (B) seeking appointment of a receiver, trustee, custodian, conservator or other similar official for it or for all or any substantial part of its assets, or Borrower or any subsidiary or general partner or member of Borrower, or any Guarantor or any Indemnitor shall make a general assignment for the benefit of its creditors; or (ii) there shall be commenced against Borrower or any subsidiary or general partner or member of Borrower, or any Guarantor or any Indemnitor any case, proceeding or other action of a nature referred to in clause (i) above which (A) results in the entry of an order for relief or any such adjudication or appointment or (B) remains undismissed, undischarged or unbonded for a period of sixty (60) calendar days; or (iii) there shall be commenced against Borrower or any subsidiary or general partner or member of Borrower or any Guarantor or any Indemnitor any case, proceeding or other action seeking issuance of a warrant of attachment, execution, distraint or similar process against all or any substantial part of its assets which results in the entry of any order for any such relief which shall not have been vacated, discharged, or stayed or bonded pending appeal within sixty (60) calendar days from the entry thereof; or (iv) Borrower or any subsidiary or general partner or member of Borrower, or any Guarantor or any Indemnitor shall take any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the acts set forth in clause (i), (ii) or (iii) above; or (v) Borrower or any subsidiary or general partner or member of Borrower, or any Guarantor or any Indemnitor shall generally not, or shall be unable to, or shall admit in writing its inability to, pay its debts as they become due; or

2.1.6.  Subject to Borrower's right to contest certain liens as provided in this Security Instrument, if the Property becomes subject to any mechanic's, materialman's or other lien other than a lien for local real estate taxes and assessments not then due and payable and the lien shall remain undischarged of record (by payment, bonding or otherwise) for a period of thirty (30) calendar days; or

2.1.7.  If any federal tax lien is filed against Borrower, any general partner of Borrower, any Guarantor, any Indemnitor, if any, or the Property and same is not discharged of record within thirty (30) calendar days after same is filed; or

2.1.8.  Except as permitted in this Security Instrument, the actual or threatened alteration, improvement, demolition or removal of any of the Improvements without the prior consent of Lender; or

2.1.9.  Damage to the Property in any manner which is not covered by insurance, which lack of coverage arises solely as a result of Borrower's failure to maintain the insurance required under this Security Instrument; or

2.1.10.  Without Lender's prior consent, (i) Borrower engages a managing agent or manager for the Property, (ii) the managing agent if any for the Property resigns or is removed, (iii) the ownership, management or control of such managing agent is transferred to a person or entity other than the general partner, managing partner or managing member or Principal of the Borrower, or (iv) there is any material change in the property management agreement of the Property; or

452157

**2.1.11.** This Security Instrument shall cease to constitute a first priority lien on the Property (other than in accordance with its terms); or

**2.1.12.** Seizure or forfeiture of the Property, or any portion thereof, or Borrower's interest therein, resulting from criminal wrongdoing or other unlawful action of Borrower, its affiliates, or any tenant in the Property under any federal, state or local law; or

**2.1.13.** If any default occurs under the Indemnity given by Borrower and Indemnitor, if any, to Lender and such default continues after the expiration of applicable notice and grace periods, if any; or

**2.1.14.** If any default occurs under any guaranty or indemnity executed in connection herewith and such default continues after the expiration of applicable grace periods, if any; or

**2.1.15.** Any other default or Event of Default occurs under this Security Instrument, the Note or any of the other Loan Documents, or a default occurs under any other agreement of Borrower relating to the Loan.

## ARTICLE 3
## REMEDIES

**3.1.** <u>List of Remedies</u>. At any time following an Event of Default, Lender may, at its option, and without notice to or demand upon Borrower:

**3.1.1.** Declare any or all indebtedness secured by this Security Instrument to be due and payable immediately;

**3.1.2.** Enter onto the Property, and it shall be lawful for the Lender, by such officer or agents, servants and employees as it may appoint or by court appointed receiver, to take possession of the Property (with the relevant books, papers and accounts of the Borrower), and to hold, operate and manage such Property, and from time to time make all needful repairs, and such alterations additions, advances and improvements as to them shall seem wise; and to receive the rents, income, issues and profits thereof and out of them to pay all proper costs and expenses of so taking, holding and managing such Property, including reasonable compensation to the Lender, its agents, servants and employees and counsel, and any charges of the Lender hereunder, and any taxes and assessments and other charges prior to the lien of these presents which the Lender may deem appropriate to pay. The remainder of the monies so received by it shall be utilized to pay interest and principal on Loan as provided herein;

**3.1.3.** Cause Borrower to assemble any Personal Property and deliver it to Lender at a place designated by Lender;

**3.1.4.** Bring a court action to foreclose this Security Instrument or to enforce its provisions or any of the indebtedness or obligations secured by this Security Instrument;

**3.1.5.** Cause any or all of the Property to be sold under the power of sale granted by this Security Instrument in any manner permitted by applicable law;

452157

3.1.6. Exercise any other right or remedy available under any of the Loan Documents, or otherwise available under law or in equity, including without limitation, rights and remedies with respect to the Personal Property that are available to a Secured Party under the Uniform Commercial Code, and the rights and remedies under Section 3.3 below.

3.2. **Appointment of a Receiver.** Upon the filing of a bill in equity, or other commencement of judicial proceedings to enforce the rights of the Lender, the Lender, as a matter of right, and without regard to the sufficiency of the security shall be entitled, if Lender in its sole discretion so desires, to the appointment (immediately and without notice to the Borrower, which is hereby waived) of a receiver of the Property, and of the income, rents, issues and profits thereof, pending such proceedings, with such powers as may be required to protect the interest of the Lender as the court making such appointment shall confer.

3.3. **Sale of Property.** If an Event of Default has occurred and is continuing, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may invoke the power of sale granted and any other remedies permitted by Idaho law or provided by this Security Instrument or in any other Loan Document. Borrower acknowledges that the power of sale granted in this Security Instrument may be exercised by Lender without prior judicial hearing. Lender shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including attorney's fees, costs of documentary evidence, abstracts and title reports. For any sale under the power of sale granted by this Security Instrument, Lender or Trustee must record and give all notices required by law and then, upon the expiration of such time as is required by law, Trustee may sell the Property upon any terms and conditions specified by Lender and permitted by applicable law. Trustee may postpone any sale by public announcement at the time and place noticed for the sale. If the Property consists of several lots or parcels, Lender in its discretion may designate their order of sale or may elect to sell them through a single sale, or through two or more successive sales, or in any other manner Lender may elect. In the event Lender elects to dispose of the Property through more than one sale, Borrower shall pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made. Any person, including Borrower, Trustee, and Lender, may purchase at any sale, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness secured hereby. Upon the sale, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the property sold, but without any covenant or warranty, express or implied, and the recitals in the deed or deeds of any facts affecting the regularity or validity of the sale shall be conclusive against all persons.

3.4 **Waiver of Rights.** Borrower waives all rights to direct the order in which any of the Property shall be sold in the event of any sale under this Security Instrument, and also any right to have any of the Property marshaled upon any sale.

3.5. **Remedies are Cumulative.** All remedies contained in this Security Instrument are cumulative, and Lender also has all other remedies provided by law, in equity, or in any other agreement between Borrower and Lender. No delay or failure by Lender to exercise any right or remedy under this Security Instrument shall be construed to be a waiver of that right or remedy or of any default by Borrower. Lender may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

3.6. **Payment of Expenses.** Borrower shall pay all of Lender and Trustee's expenses incurred in any efforts to enforce any terms of this Security Instrument, whether or not any lawsuit is filed, including but not limited to legal fees and disbursements, foreclosure costs, escrow fees, filing fees, recording fees, and title charges.

452157

3.7.   **No Cure or Waiver.**  Neither Lender nor Trustee nor any receiver's entry upon and taking possession of all or any part of the Property, nor any collection of rents, issues, profits, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collected sum to any Obligation, nor the exercise of any other right or remedy by Lender or Trustee or any receiver shall cure or waive any breach, Default or notice of default under this Security Instrument, or nullify the effect of any notice of default or sale (unless all Obligations then due have been paid and performed and Borrower has cured all other defaults), or impair the status of the security, or prejudice Lender or Trustee in the exercise of any right or remedy, or be construed as an affirmation by Lender of any tenancy, lease, or option or a subordination of the lien of this Security Instrument.

3.8.   **Power to File Notices and Cure Defaults.**  Borrower hereby irrevocably appoints Lender and its successors and assigns as its attorney-in-fact, which agency is coupled with an interest, (a) to execute and record any notices of completion, cessation of labor, or any other notices that Lender deems appropriate to protect Lender's interest, and (b) upon the occurrence of a Default, to perform any obligation of Borrower hereunder; provided, that (i) Lender, as such attorney-in-fact, shall only be accountable for such funds as are actually received by Lender; and (ii) Lender shall not be liable to Borrower or any other person or entity for any failure to act under this section.

3.9   **Conformity of Remedies; Mortgage.**  Any procedures or remedies provided herein shall be modified by and replaced with, where inconsistent with or required by, any procedures or requirements of the laws of the state in which the Property is located.  In addition, should this instrument be or become ineffective as a Security Instrument, then these presents shall be construed and enforced as a realty mortgage with the Borrower being the mortgagor and Lender being the mortgagee.

### * ARTICLE 4
### MISCELLANEOUS

4.1.   **Invalidity.**  The invalidity or unenforceability of any one or more provisions of this Security Instrument will in no way affect any other provision.

4.2.   **Statement.**  Borrower agrees to pay Lender a reasonable charge, not to exceed the maximum allowed by law, for giving any statement of the status of the Obligations secured by this Security Instrument.

4.3.   **Notices.**  All notices given under this Security Instrument must be in writing and will be effectively served upon personal delivery or, if mailed, no later than forty-eight (48) hours after deposit in first class or certified United States mail, postage prepaid, sent to Lender at its address appearing on the front page of this Security Instrument and sent to Borrower at its address appearing on the front page of this Security Instrument, which address may be changed by written notice.

4.4.   **Rights of Lender to Release Debtors or Security.**  Without affecting Borrower's liability for the payment of any of the indebtedness secured by this Security Instrument, Lender may from time to time and without notice to Borrower (a) release any person liable for the payment of this indebtedness, (b) extend or modify the terms of that indebtedness, or (c) accept additional real or personal property of any kind as security, or alter, substitute or release any property securing that indebtedness, or (d) cause the Trustee to consent to the making of any map or plat of the Property, or to reconvey any part of the Property, or to join in granting any easement or creating any restriction on the Property, or to join in any subordination or other agreement affecting this Security Instrument.

452157

**4.5.** **Inspection Rights.** Lender may at any reasonable times enter upon and inspect the Property in person or by agent.

**4.6.** **Reconveyance.** Upon payment in full of all sums secured by this Security Instrument, Lender agrees to request Trustee to reconvey the Property, and upon payment by Borrower of its fees and all other sums owing to it under this Security Instrument, Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons must pay all costs of recordation. The recitals in the reconveyance of any facts will be conclusive as to all persons. The grantee in the reconveyance may be described as "the person or persons legally entitled thereto."

**4.7.** **Governing Law.** This Security Instrument and all rights and obligations hereunder shall be governed by and interpreted according to the laws of the state where the Property is located.

**4.8.** **Use of Pronouns.** The term "Borrower" includes both the original Borrower and any subsequent owner or owners of any of the Property, and the term "Lender" includes the original Lender and also any future owner or holder, including pledges and participants, of the Note or any interests therein. Whenever the context requires, the singular includes the plural and vice versa and each gender includes each other gender.

**4.9.** **Headings; Underlining.** The headings of the articles and sections of this Security Instrument are for convenience only and do not limit its provisions. The use of underlining in this Security Instrument is for convenience only, and the parties understand and agree that the presence or absence of underlining shall not be used in interpreting or construing this Security Instrument or any provision hereof.

**4.10.** **Waiver.** Neither the acceptance of any partial or delinquent payment or performance nor the failure to exercise any rights upon a default shall be a waiver of Borrower's obligations hereunder. Lender's consent to any act or omission by Borrower will not be a consent to any other or subsequent act or omission or a waiver of the need for such consent in any future or other instance.

**4.11.** **Successors and Assigns.** Subject to the provisions of Section 1.6 hereof, the terms of this Security Instrument shall bind and benefit heirs, legal representatives, successors and assigns of Borrower and Lender and the successors in trust of Trustee.

**4.12.** **Joint and Several Liability.** If Borrower consists of more than one person or entity, each shall be jointly and severally liable to perform the Obligations of Borrower.

**4.13.** **Acceptance of Trust Powers and Duties of Trustee.** Trustee accepts this trust when this Security Instrument is recorded. From time to time, upon written request of Lender and presentation of this Security Instrument for endorsement, and without affecting the personal liability of any person for payment of any indebtedness or performance of any obligation secured hereby, Trustee may, without liability therefore and without notice: reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in any grant of easement thereon, any declaration of covenants and restrictions, any extension agreement or any agreement subordinating the lien or charge hereof. Trustee or Lender may from time to time apply to any court of competent jurisdiction for aid and direction in the execution of the trusts hereunder and the enforcement of the rights and remedies available hereunder, and may obtain orders or decrees directing or confirming or approving acts in the execution of such trusts and the enforcement of such rights and remedies. Trustee has no obligation to notify any party of any pending sale or any action or proceeding (including, but not limited to actions in which Borrower, Lender or Trustee shall be a party) unless held or commenced and maintained by Trustee under this Security

452157

Instrument. Trustee shall not be obligated to perform any act required of it hereunder unless the performance of the act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

4.14.    **Removal of Trustee.** Lender may remove Trustee or any successor Trustee at any time or times and appoint a successor Trustee by recording a written substitution in the county in which the Property covered by this Security Instrument is located, or in any other manner permitted by law. Upon that appointment, all of the powers, rights and authority of Trustee will immediately become vested in its successor.

4.15.    **Subrogation.** Lender shall be subrogated to the lien of all encumbrances, whether released of record or not, paid in whole or in part by Lender pursuant to this Security Instrument or by the proceeds of any loan secured by this Security Instrument.

4.16.    **Time of the Essence.** Time of the Essence as to all obligations under this security instrument.

4.17.    **Requests For Notice.** Borrower requests that a copy of any notice of default and notice of sale required by law be mailed to it at its address set forth above.

## ARTICLE 5
## ASSIGNMENT OF LEASES AND RENTS

5.1.    **Scope of Assignment.** Borrower hereby absolutely and irrevocably grants, sells, assigns, transfers and sets over to Lender:

5.1.1.    **Rents.** All Rents now existing or hereafter created and affecting all or any portion of the Property or the use or occupancy thereof.

5.1.2.    **Leases.** All of Borrower's right, title and interest in and to all leases, subleases, subtenancies, licenses, occupancy agreements and concessions covering Property or any portion thereof or space therein now or hereafter existing, including all modifications, amendments, extensions and renewals thereof, and all rights and privileges incident thereto (collectively **"Leases"**).

5.1.3.    **Security Deposits.** All security deposits, guaranties and other security now or hereafter held by Borrower as security for the performance of the obligations of the Lessees under the Leases.

5.2.    **Effect of Assignment.** This Assignment is intended by Borrower and Lender to create and shall be construed to create an assignment to Lender of all of Borrower's right, title and interest in the Rents and in the Leases, and shall be deemed to create a security interest therein for the payment of any indebtedness or the performance of any obligations of Borrower under the Note, the Trust Indenture or this Security Instrument. Borrower and Lender further agree that, during the term of this Assignment, the Rents shall not constitute property of Borrower (or of any estate of Borrower) within the meaning of 11 U.S.C. § 541, as amended from time to time.

5.3.    **Grant of License.** By its acceptance of this Assignment and so long as an Event of Default shall not have occurred and be continuing hereunder, Lender hereby grants to Borrower a revocable license to enforce the Leases, to collect the Rents, to apply the Rents to the payment of costs and expenses incurred in connection with the development, construction, operation, maintenance, repair

*New Hope Assembly of God, Inc.*
*Deed of Trust, Assignment of Leases and Rents and Security Agreement (107040) – page 14*

452157

and restoration of the Property, and to any indebtedness secured thereby and to distribute the balance, if any, to Borrower.

5.4.  **Revocation of License.** Upon the occurrence of an Event of Default, and at any time thereafter during the continuance of such default, Lender shall have the right to revoke the license granted to Borrower hereby by giving written notice of such revocation to Borrower. Upon such revocation, Borrower shall promptly deliver to Lender all Rents then held by Borrower and Lender shall thereafter be entitled to enforce the Leases, to collect and receive, without deduction or offset, all Rents payable thereunder, including, but not limited to, all Rents which were accrued and unpaid as of the date of such revocation and to apply such Rents as provided in this Security Instrument.

5.5.  **Appointment of Borrower as Agent for Lender.**

5.5.1.  **Purpose of Appointment.** Upon such revocation, Lender may, at its option, appoint Borrower to act as agent for Lender for the purpose of:

5.5.1.1.  Managing and operating the Property and paying all expenses incurred in connection therewith and approved by Lender.

5.5.1.2. Enforcing the provisions of the Leases.

5.5.1.3. Collecting all Rents due thereunder.

5.5.2.  **Notice to Borrower to Act as Agent.** If Lender so elects, Lender shall give written notice thereof to Borrower and Borrower agrees to act as agent of assignee for the purpose or purposes specified in such notice. Borrower shall promptly comply with all instructions and directions from Lender with respect thereto. Borrower shall not be entitled to any management fee, commission or other compensation unless expressly agreed to in writing by Lender.

5.5.3.  **Deposit of Rents Collected.** All Rents collected by Borrower as agent for Lender pursuant to this Section shall be immediately deposited in an insured account in the name of Lender in a bank or other financial institution designated by Lender. All Rents collected by Borrower and all amounts deposited in such account, including interest thereon, shall be the property of Lender and Borrower shall not be entitled to withdraw any amount from such account without the prior written consent of Lender.

5.5.4.  **Purpose of Agency.** The agency hereby created shall be solely responsible for the purpose of implementing the provisions of this Assignment and collecting the Rents due Lender hereunder. Nothing contained herein shall place upon Lender the responsibility for the management, control, operation, repair, maintenance or restoration of the Property nor shall Lender be liable under or be deemed to have assumed Borrower's obligations with respect to the Leases. Lender may at any time terminate the agency relationship with Borrower by written notice to Borrower.

5.6.  **Collection by Lender.** Upon the occurrence of an Event of Default and at any time thereafter during the continuance thereof, Lender shall have the right, in addition to the rights granted pursuant to this Section 5.6 hereof, to collect all or any portion of the Rents assigned hereby directly or through a court-appointed receiver. Such right shall include any and all of the following:

5.6.1.  **Notice to Lessees to Pay Rents to Lender.** The right to notify the Lessee or Lessees under the Leases, with or without taking possession of the Property, to demand that all Rents under such Leases thereafter be paid to Lender;

452157

**5.6.2.** **Enter and Possess the Property.** The right to enter into possession of the Property, to assume control with respect to and to pay all expenses incurred in connection with the development, construction, operation, maintenance, repair or restoration of the Property, to enforce all Leases and to collect all Rents due there under, to apply all Rents received by Lender, to amend, modify, extend, renew and terminate any or all Leases, to execute new Leases, to execute new Leases and to do all other acts which Lender shall determine, in its sole discretion, to be necessary or desirable to carry out the purposes of this Assignment; and

**5.6.3.** **Specific Performance.** The right to specifically enforce the provisions of this Assignment and if Lender shall so elect, to obtain the appointment of a receiver pursuant to and in accordance with the provisions of this Security Instrument.

**5.7.** **Protection of Lessees.** Borrower and Lender agree that all Lessees under any Leases shall be bound by and required to comply with the provisions of this Assignment. In connection therewith, Borrower and Lender further agree as follows:

**5.7.1.** **Notice to Lessees of Assignment.** If requested by Lender, Borrower shall: (i) notify each Lessee under any Lease now affecting all or any portion of the Property of the existence of this Assignment and the rights and obligations of Borrower and Lender hereunder; (ii) provide each Lessee with a copy of this Assignment; and (iii) obtain such Lessee's agreement to be bound and comply with the provisions hereof.

**5.7.2.** **Reference to Assignment.** All Leases hereafter executed with respect to the Property or any portion thereof shall contain a reference to this Assignment and shall state that such Lessee shall be bound by and shall comply with the provisions hereof.

**5.7.3.** **Occurrence of Event of Default.** Upon the occurrence of an Event of Default and at any time thereafter during the continuance thereof, Lender may, at its option, send any Lessee a notice to the effect that: (i) an Event of Default has occurred and that Lender has revoked Borrower's license to collect the Rents; (ii) Lender has elected to exercise its rights under this Assignment; and (iii) such Lessee is hereby directed to thereafter make all payments of Rents and to perform all obligations under its lease or for the benefit of Lender or as Lender shall direct.

**5.7.4.** **Notice to Lessee to Comply with Leases.** Upon receipt of any such notice from Lender, each Lessee is hereby instructed by Borrower and Lender to comply with the provisions of such notice, to make all payments of Rents and to perform all obligations under the lease to and for the benefit of Lender or as Lender shall direct. Such notice and direction shall remain effective until the first to occur of: (i) the receipt by Lessee of a subsequent notice from Lender to the effect that such Event of Default has been cured or that Lender has appointed Borrower to act as agent for Lender pursuant to this Assignment; (ii) the appointment of a receiver pursuant to this Assignment, in which event such Lessee shall thereafter make payments of Rents and perform all obligations under the leases as may be directed by such receiver; or (iii) the issuance of an order of a court of competent jurisdiction terminating this Assignment or otherwise directing such Lessee to pay Rents and perform its obligations in a manner inconsistent with said notice.

**5.7.5.** **Lessee's Reliance on Notice from Lender.** Each Lessee shall be entitled to rely upon any notice from Lender and shall be protected with respect to any payment of Rents made pursuant to such notice.

452157

**5.7.6.  No Duty for Lessee to Investigate.** Each Lessee who receives a notice from Lender pursuant to this Assignment shall not be required to investigate or determine the validity or accuracy of such notice or the validity or enforceability of this Assignment. Borrower hereby agrees to indemnify, defend and hold such Lessee harmless from and against any and all loss, claim, damage or liability arising from or related to payment of Rents or performance of obligations under any lease by such Lessee made in good faith in reliance on and pursuant to such notice.

**5.7.7.  No Assumption by Lender of Lease Obligations.** The payment of Rents to Lender pursuant to any such notice and the performance of obligations under any Lease to or for the benefit of Lender shall not cause Lender to assume or be bound by the provisions of such Lease, including, but not limited to, duty to return any security deposit to the Lessee under such lease unless and to the extent such security deposit was paid to Lender by Borrower.

**5.7.8.  Assignment Binding on Lessees.** The provisions of this Section 5.7 are expressly made for the benefit of and shall be binding on and enforceable by each Lessee under any Lease now or hereafter affecting all or any portion of the Property.

**5.8.  Application of Rents; Security Deposits.** All Rents received by Lender pursuant to this Assignment shall be applied by Lender, in its sole discretion, to any of the following:

**5.8.1.  First,** to pay any costs and expenses of collection of the Rents that may be incurred by Lender;

**5.8.2.  Second,** to pay any costs and expenses incurred by Lender in connection with the development, construction, operation, maintenance, repair or restoration of the Property;

**5.8.3.  Third,** to the establishment of reasonable reserves for working capital and for anticipated or projected costs and expenses of the Property, including, without limitation, capital improvements which may be necessary or desirable or required by law;

**5.8.4.  Fourth,** to the payment of any indebtedness then owing by Borrower to Lender; and

**5.8.5.  Thereafter,** to remit the remainder, if any, to the person or persons entitled thereto.

**5.8.6.** In connection therewith, Borrower further agrees that all Rents received by Lender from any Lessee may be allocated, if Lender so elects, to the payment of all current obligations of such Lessee under its Lease and not to amounts which may be accrued and unpaid as of the date of revocation of Borrower's license to collect such Rents. Lender may, but shall have no obligation to, pursue any Lessee for the payment of Rents which may be due under its lease with respect to any period prior to the exercise of Lender's rights under this Assignment or which may become due thereafter. Lender shall not be liable to any Lessee for the payment or return of any security deposit under any Lease unless and to the extent that such security deposit has been paid to and received by Lender, and Borrower agrees to indemnify, defend and hold Lender harmless from and against any and all losses, claims, damages or liabilities arising out of any claim by a Lessee with respect thereto. Borrower further agrees that the collection of Rents by Lender and the application of such Rents by Lender to the costs, expenses and obligations referred to herein shall not cure or waive any default or Event of Default or invalidate any act (including, but not limited to, any sale of all or any portion of the Property or any property now or hereafter securing the Loans) done in response to or as a result of such Event of Default or pursuant to any notice of default or notice of sale issued pursuant to this Security Instrument.

452157

5.9.   **Covenants of Borrower.**  Borrower agrees as follows:

5.9.1.   **No Amendment or Termination of Leases.**  Borrower shall not enter into, amend, modify or terminate any lease of all or any portion of the Property, except in accordance with the provisions of this Security Instrument;

5.9.2.   **No acceptance of Advance Rent.**  Borrower shall not accept advance rent in excess of one (1) month from any Lessee without the prior written consent of Lender;

5.9.3.   **Delivery of Leases.**  Upon request by Lender, Borrower shall provide Lender with true, correct and complete copies of all Leases, together with such other information relating to the Leases or to the Lessees thereunder as Lender shall reasonably request; and

5.9.4.   **Lender's Rights to Inspect Books and Records.**  Upon request of Lender, Borrower shall make available to Lender all books, records, financial statements and other information relating to the Leases, the collection of all Rents, and the disposition and disbursement thereof.

5.10.   **Priority of Assignment; Further Assurances.**  Borrower hereby represents and warrants that the Assignment of Rents hereby granted is a first priority assignment and that no other assignments of all or any portion of the Rents or the leases exist or remain outstanding.  Borrower agrees to take such action and to execute, deliver and record such documents as may be reasonably necessary to evidence such assignment, to establish the priority thereof and to carry out the intent and purpose hereof, if requested by Lender, Borrower shall execute a specific assignment of any lease now or hereafter affecting all or any portion of the Property.

5.11.   **Lender Not Responsible for Borrower's Obligations.**  Nothing contained herein shall operate or be construed to obligate Lender to perform any of the terms, covenants and conditions contained in any lease or otherwise to impose any obligation upon Lender with respect to any lease, including, but not limited to, any obligation arising out of any covenant of quiet enjoyment therein contained in the event the Lessee under any such Lease shall have been joined as a party defendant in any action to foreclose and the estate of such Lessee shall have been thereby terminated. Prior to actual entry into and taking possession of the Property by Lender, this Assignment shall not operate to place upon Lender any responsibility for the operation, control, care, management or repair of the Property or any portion thereof and the execution of this Assignment by Borrower shall constitute conclusive evidence that all responsibility for the operation control, care, management and repair of the Property is and shall be that of Borrower, prior to such actual entry and taking of possession.

5.12.   **Termination of Assignment.**  A full and complete release and reconveyance of this Security Instrument shall operate as a full and complete release of all of Lender's rights and interest hereunder.  Upon the recordation of such release and reconveyance, this Assignment shall thereafter be void and of no further effect.

THIS SECURITY INSTRUMENT IS A FIRST DEED OF TRUST.  NO FURTHER DEEDS OF TRUST OR SECURITY DEEDS WILL BE RECORDED AGAINST THE PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF THE LENDER.  FAILURE TO COMPLY WITH THIS PROVISION SHALL CONSTITUTE A DEFAULT AND THE LOANS SHALL IMMEDIATELY BECOME DUE AND PAYABLE.  CONSENT TO ONE FURTHER ENCUMBRANCE SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO REQUIRE SUCH CONSENT TO FUTURE OR SUCCESSIVE ENCUMBRANCES.

452157

IN WITNESS WHEREOF, the undersigned have hereto set their hand and seal the above day and year above written.

BORROWER:

NEW HOPE ASSEMBLY OF GOD, INC.

By: _____
Ralph D. Moats, Senior Pastor

By: _____
Edna Marie Stevenson, Secretary

STATE OF IDAHO            )
                          ) ss.
COUNTY OF Shoshone        )

On this 13th day of June _____, in the year 2009, before me
Kari A Hill _____, a notary public, personally appeared ~~Ralph D. Moats and~~ Edna Marie Stevenson, known or identified to me to be the ~~Senior Pastor and~~ Secretary, respectively, of the corporation that executed the above instrument or the persons who executed the instrument on behalf of said corporation and acknowledged to me that such corporation executed the same.

In witness whereof I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Kari A Hill _____
Notary Public

residing at Wallace _____

My commissions expires on 7/14/11 _____

U52157

IN WITNESS WHEREOF, the undersigned have hereto set their hand and seal the above day and year above written.

BORROWER:

NEW HOPE ASSEMBLY OF GOD, INC.

By: _____
Ralph D. Moats, Senior Pastor

By: _____
Edna Marie Stevenson, Secretary

STATE OF IDAHO      )
                       ) ss.
COUNTY OF _Shoshone_  )

On this 17th day of June _____, in the year 2009, before me Kari A. Hill _____, a notary public, personally appeared Ralph D. Moats and Edna Marie Stevenson, known or identified to me to be the Senior Pastor and Secretary, respectively, of the corporation that executed the above instrument or the persons who executed the instrument on behalf of said corporation and acknowledged to me that such corporation executed the same.

In witness whereof I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

_Kari A. Hill_ _____
Notary Public

residing at _Wallace_ _____

My commissions expires on _7/14/11_ _____

Order No.: 2040906848MH                           452157

## LEGAL DESCRIPTION

## EXHIBIT 'A'

**PARCEL 1:**

Being a tract of land lying in the Southwest quarter Southwest quarter of Section 5, Township 48 North, Range 2 East, Boise Meridian, Shoshone County, State of Idaho and being more particularly described as follows:

Using an astronomic meridian and beginning at Corner No. 1 from whence the Southwest corner of said Section bears

South 65°34.7' West, 421.6 feet distant; thence

North 31°21' East, 192.00 feet distant to Corner No. 2; thence

South 58°39' East, 100.00 feet distant to Corner No. 3; thence

South 31°21' West, 192.00 feet distant to Corner No. 4; thence

North 58°39' West, 100.00 feet distant to Corner No. 1, the place of beginning.

**PARCEL 2:**

Being a tract of land lying in the Southwest Quarter of the Southwest Quarter of Section 5, Township 48 North, Range 2 East Boise Meridian, Shoshone County, State of Idaho and being more particularly described as follows:

Using an astronomic meridian and beginning at Corner No. 1, identical with Corner No. 1 of the Boylan Tract, from whence the Southwest corner of said Section 5 bears North 88°54.5' West, 285.00 feet distant; thence

North 0°12' East, 50.01 feet distant to Corner No. 2; thence

South 88°54.5' East, 264.38 feet distant to Corner No. 3; thence

South 20°33.2' West, 53.03 feet distant to Corner No. 4; thence

North 88°54.5' West, 245.93 feet distant to Corner No. 1, the place of beginning.

EXCEPT a strip of land Southeasterly of a line parallel with and 30.00 feet Northwesterly from the following described centerline of Division Street Project No. RS-5750(2) Highway Survey as shown on the plans thereof on file in the office of the County Commissioners of Shoshone County, Idaho and being a portion of the Southwest Quarter of Section 5 and

452157

Northwest Quarter of Section 8, all in Township 48 North, Range 2 East, Boise Meridian and described as follows:

Beginning at Station 72+74 of said Division Street Project No. RS-5750(2) Highway Survey which bears 36"00'19" West, 7433.92 feet from City of Pinehurst Monument Station "Pine"; thence

Southwesterly along a curve to the left 201 feet, more or less, said curve having a central angle of 10°03'00", a radius of 1,145.92 feet tangents of 100.76 feet and a long chord of 200.74 feet bearing South 22°11'06" West to a point of ending of curve marking Station 74+75 of said Highway Survey.

PARCEL 3:

Being a tract of land lying in the Northwest Quarter of the Northwest Quarter of Section 8, Township 48 North, Range 2 East, Boise Meridian, Shoshone County, State of Idaho and being more particularly described as follows:

Beginning at Corner No. 1, a steel pin on the East dike of Pine Creek, from whence the Northwest Corner of Section 8, Township 48 North, Range 2 East, B.M., bears North 88°45'30" West, 390.26 feet distant; thence

South 88°54'30" East along the North line of said Section 8, 350.00 feet distant to Corner No. 2, a steel pin; thence

South 18°00' West along the Pine Creek Highway right-of-way, 156.78 feet distant to Corner No. 3, a steel pin; thence

North 88°54'30" West, 295.00 feet distant to Corner No. 4, a steel pin; thence

North 02°29'40" West along the East dike of Pine Creek, 150.30 feet distant to Corner No. 1, the place of beginning.

EXCEPT a strip of land Southeasterly of a line parallel with and 30.00 feet Northwesterly from the following described centerline of Division Street Project No. RS-5750(2) Highway Survey as shown on the plans thereof on file in the office of the County Commissioners of Shoshone County, Idaho and being a portion of the Southwest Quarter of Section 5 and Northwest Quarter of Section 8, all in Township 48 North, Range 2 East, Boise Meridian and described as follows:

Beginning at Station 72+74 of said Division Street Project No. RS-5750(2) Highway Survey which bears 36"00'19" West, 7433.92 feet from City of Pinehurst Monument Station "Pine"; thence

Southwesterly along a curve to the left 201 feet, more or less, said curve having a central angle of 10°03'00", a radius of 1,145.92 feet tangents of 100.76 feet and a long chord of 200.74 feet bearing South 22°11'06" West to a point of ending of curve marking Station 74+75 of said Highway Survey.

452157

## EXHIBIT B
### DESCRIPTION OF COLLATERAL

(a)    All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land as described in Exhibit "A" ("Property"), and all fixtures, machinery, equipment, building materials, appliances and goods of every nature now or hereafter located on or upon, or intended to be used in connection with, the Land or the improvements thereon, including, but not by way of limitation, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators and related machinery and equipment; all plumbing; and all personal property and fixtures of every kind and character now or at any time hereafter located in or upon the Land or the improvements thereon, of which may now or hereafter be used or obtained in connection therewith, including, without limitation, fixtures, machinery, equipment, appliances, vehicles (excluding Debtor's personal automobiles, if any), building supplies and materials, books and records, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Debtor and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land or any improvements thereon, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Debtor in any such fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposit or payments now or hereafter made by Debtor or on behalf of Debtor, all trade names, trademarks, service marks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land or any improvements thereon or any part thereof or are now or hereafter acquired by Debtor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described herein, and all other interests of every kind and character in all of the real, personal, intangible and mixed properties described herein which Debtor may now own or at any time hereafter acquire, all of which are hereby declared and shall be deemed *to* be fixtures and accessions to the Land and a part of the Land as between the parties hereto and made all persons claiming by, through or under them.

(b)    All of the interest of Debtor in all easements, rights-of-way, licenses, operating agreements, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, oil and gas and other minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions and remainders, whatsoever, in any way belonging, relating or appertaining to the Land or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Debtor.

(c)    All income (but not limited to, all revenues, pledges, income, gifts, donations and offerings from whatever source owned by Debtor), rents, issues, royalties, profits, revenues and other benefits of the Land from time to time accruing, all payments under leases or tenancies, proceeds of insurance, condemnation awards and payments and all payments on account of oil and gas and other mineral leases, working interests, production payments, royalties, overriding royalties, rents, delay rents, operating interests, participating interests and other such

entitlements, and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Debtor of, in and to the same (hereinafter collectively referred to as the "Revenues"); reserving only the right to Debtor to collect the Revenues as provided in the Deed of Trust, Assignment of Leases and Rents and Security Agreement executed by Debtor in favor of Secured Party.

(d)   All construction or development contracts, subcontracts, architectural agreements, labor, material and payment bonds, and plans and specifications relating to the construction of improvements on the Land including, without limitation (i) any engineering or architectural agreements entered into with respect to the design and other engineering or architectural services; (ii) the plans and specifications for the construction of said improvements prepared by any engineer or architect; and (iii) any agreements entered into with contractors, suppliers, materialmen or laborers with respect to construction of improvements on the Land.

(e)   If applicable, any and all management contracts, agreements, or other correspondence entered into by and between Debtor and third parties for the management of the collateral secured hereby.

(f)   Together with any and all additional items of personal property, furnishings, fixtures, equipment, furniture, trade fixtures, and other items of property not heretofore referenced above, including any and all musical instruments, church pews, chairs, pulpits, podiums, and all other items used in connection with the operation of the premises as a church and related church functions.

452157

**Instrument # 452157**
WALLACE, SHOSHONE COUNTY, IDAHO
6-17-2009        02:08:00  No. of Pages: 24
Recorded for : ALLIANCE TITLE CO.
PEGGY DELANGE-WHITE        Fee: 72.00
Ex-Officio Recorder  Deputy _____
Index to: DT & ASSIGN LEASES & RENTS

2009 JUN 17 PM 2 08

RECORDING REQUESTED BY                    468890

WHEN RECORDED MAIL TO

**Pioneer Lender Trustee Services**
8151 W. Rifleman Street
Boise, ID 83704

Trustee's Sale No:      ID-PRV-12002535

# NOTICE OF DEFAULT

**NOTICE IS HEREBY GIVEN** that Pioneer Title Company of Ada County, dba Pioneer Lender Trustee Services, is the Successor Trustee under the Deed of or Transfer in Trust executed by NEW HOPE ASSEMBLY OF GOD, INC., AN IDAHO NONPROFIT CORPORATION, as Grantor, to RUDY L. PATRICK, as Trustee, in favor of ASSEMBLIES OF GOD LOAN FUND, A MISSOURI NON PROFIT CORPORATION, as Beneficiary, dated 6/17/2009, recorded 6/17/2009 , under Instrument No. 452157, records of SHOSHONE COUNTY, IDAHO, the beneficial interest in which is presently held by ASSEMBLIES OF GOD LOAN FUND, A MISSOURI NON PROFIT CORPORATION.  Said Deed of Trust covers real property situated in said County, described as follows:

Real property in the County of Shoshone, State of Idaho, described as follows:

PARCEL 1:
Being a tract of land lying in the Southwest Quarter of the Southwest Quarter of Section 5, Township 48 North, Range 2 East, Boise Meridian, Shoshone County, State of Idaho and being more particularly described as follows:
Using an astronomic meridian and beginning at Corner No. 1 from whence the Southwest corner of said Section bears
South 65°34.7'West, 421.6 feet distant; thence
North 31°21'East, 192.00 feet distant to Corner No. 2; thence
South 58°39'East, 100.00 feet distant to Corner No. 3; thence
South 31°21'West, 192.00 feet distant to Corner No. 4; thence
North 58°39'West, 100.00 feet distant to Corner No. 1, the place of beginning.

PARCEL 2:
Being a tract of land lying in the Southwest Quarter of the Southwest Quarter of Section 5, Township 48 North, Range 2 East, Boise Meridian, Shoshone County, State of Idaho and being more particularly described as follows:
Using an astronomic meridian and beginning at Corner No. 1, identical with Corner No. 1 of the Boylan Tract, from whence the Southwest corner of said Section 5 bears North 88°54.5' West, 285.00 feet distant; thence
North 0°12'East, 50.01 feet distant to Corner No. 2; thence
South 88°54.5'East, 264.38 feet distant to Corner No. 3; thence
South 20°33.2'West, 53.03 feet distant to Corner No. 4; thence
North 88°54.5' West, 245.93 feet distant to Corner No. 1, the place of beginning.

EXCEPT a strip of land Southeasterly of a line parallel with and 30.00 feet Northwesterly from the following described centerline of Division Street Project No. RS-5750(2) Highway Survey as shown on the plans thereof on file in the office of the County Commissioners of Shoshone County, Idaho and being a portion of the

Page 1                                                    ID_NOD

EXHIBIT
B

4468890

Southwest Quarter of Section 5 and Northwest Quarter of Section 8, all in Township 48 North, Range 2 East, Boise Meridian and described as follows:
Beginning at Station 72+74 of said Division Street Project No. RS-5750(2) Highway Survey which bears 36°00'19"West, 7433.92 feet from City of Pinehurst Monument Station "Pine"; thence Southwesterly along a curve to the left 201 feet, more or less, said curve having a central angle of 10°03'00", a radius of 1,145.92 feet tangents of 100.76 feet and a long chord of 200.74 feet bearing South 22°11'06"West to a point of ending of curve marking Station 74+75 of said Highway Survey.

PARCEL 3:
Being a tract of land lying in the Northwest Quarter of the Northwest Quarter of Section 8, Township 48 North, Range 2 East, Boise Meridian, Shoshone County, State of Idaho and being more particularly described as follows:
Beginning at Corner No. 1, a steel pin on the East dike of Pine creek, from whence the Northwest Corner of Section 8, Township 48 North, Range 2 East, B.M., bears North 88°45'30"West, 390.26 feet distant; thence South 88°54'30"East along the North Line of said Section 8, 350.00 feet to Corner No. 2, a steel pin; thence South 18°00'West along the Pine Creek Highway right-of-way, 156.78 feet distant to Corner No. 3, a steel pin; thence North 88°54'30"West, 295.00 feet distant to Corner No. 4, a steel pin; thence North 02°29'40"West along the East dike of Pine Creek, 150.30 feet distant to Corner No. 1, the place of beginning.

EXCEPT a strip of land Southeasterly of a line parallel with and 30.00 feet Northwesterly from the following described centerline of Division Street Project No RS-5750(2) Highway Survey as shown on the plans thereof on file in the office of the County Commissioners of Shoshone County, Idaho and being a portion of the Southwest Quarter of Section 5 and Northwest Quarter of Section 8, all in Township 48 North, Range 2 East, Boise Meridian and described as follows:
Beginning at Station 72+74 of said Division Street Project No. RS-5750(2) Highway Survey which bears 36°00'19"West, 7433.92 feet from City of Pinehurst Monument Station "Pine"; thence Southwesterly along a curve to the left 201 feet, more or less, said curve having a central angle of 10°03'00", a radius of 1,145.92 feet tangents of 100.76 feet and a long chord of 200.74 feet bearing South 22°11'06"West to a point of ending of curve marking Station 74+75 of said Highway Survey.

The Trustee hereby gives notice that a breach of the obligation for which such transfer is security has occurred, the nature of such breach is the failure to pay when due under the Deed of Trust Note dated 6/17/2009, FAILURE TO PAY THE PRINCIPAL BALANCE OF $194,051.23 PLUS ACCRUED INTEREST AND CHARGES AS SET FORTH, WHICH BECAME DUE AND PAYABLE BY REASON OF BENEFICIARY'S EXERCISE OF ITS RIGHT TO ACCELERATE THE LOAN SECURED BY SAID DEED OF TRUST, WHICH RIGHT OCCURRED UPON THE VIOLATION OF THE PROVISION OF THE DEED OF TRUST WHICH ALLOWS BENEFICIARY TO CALL ALL AMOUNTS DUE AND PAYABLE IN FULL UPON DEFAULT OF MONTHLY PAYMENTS.   THE BENEFICIARY MAY ELECT, IN ITS DISCRETION, TO EXERCISE ITS RIGHTS AND REMEDIES IN ANY MANNER PERMITTED UNDER THE UNIFORM COMMERICAL CODE, AS TO ALL OR SOME OF THE PERSONAL PROPERTY, FIXTURES AND OTHER GENERAL TANGIBLES AND INTANGIBLES MORE PARTICULARLY DESCRIBED IN THE DEED OF TRUST.

All delinquencies are now due, together with unpaid and accruing taxes, assessments, trustee's fees, attorney's fees, costs and advances made to protect the security associated with this foreclosure. The principal balance is $194,051.23, together with interest thereon at 8.750% per annum from 7/9/2012, until paid.

ID_NOD

The Beneficiary elects to sell or cause the trust property to be sold to satisfy said obligation.

DATED:  8/1/2012

Trustee Services

Pioneer Title Company of Ada County, dba Pioneer Lender

Trustee

By _____

   Amy L. Bowles, Assistant Secretary

STATE OF IDAHO          )
                        ) ss.
COUNTY OF ADA           )

On 8/1/2012, before me a Notary Public in and for said State, personally appeared Amy L. Bowles, known and identified to me to be the Assistant Secretary, of the corporation who executed this instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

NOTARY PUBLIC in and for the State of Idaho
residing at: Boise, ID
My commission expires: 4/18/2014

468890

Instrument # 468890
WALLACE, SHOSHONE COUNTY, IDAHO
8-31-2012       01:14:03   No. of Pages: 3
Recorded for : FIRST AMERICAN TITLE CO.
PEGGY DELANG-WHITE            Fee: 18.00
Ex-Officio Recorder  Deputy
Index to: NOTICE OF DEFAULT

2012 AUG 31  PM 1 14

# NOTICE OF TRUSTEE'S SALE

Trustee's Sale No. ID-PRV-12002535

**NOTICE IS HEREBY GIVEN** that, Pioneer Title Company of Ada County, dba Pioneer Lender Trustee Services, the duly appointed Successor Trustee, will on **January 11, 2013**, at the hour of **11:00 AM**, of said day, **FIRST AMERICAN TITLE COMPANY, 111 MAIN STREET, KELLOGG, ID**, sell at public auction to the highest bidder, for cash, in lawful money of the United States, all payable at the time of sale, the following described real and personal property (hereafter referred to collectively as the "Property"), situated in the County of SHOSHONE, State of Idaho, to-wit:

Real property in the County of Shoshone, State of Idaho, described as follows:
PARCEL 1:
Being a tract of land lying in the Southwest Quarter of the Southwest Quarter of Section 5,
Township 48 North, Range 2 East, Boise Meridian, Shoshone County, State of Idaho and
being more particularly described as follows:
Using an astronomic meridian and beginning at Corner No. 1 from whence the Southwest
corner of said Section bears
South 65°34.7'West, 421.6 feet distant; thence
North 31°21'East, 192.00 feet distant to Corner No. 2; thence
South 58°39'East, 100.00 feet distant to Corner No. 3; thence
South 31°21'West, 192.00 feet distant to Corner No. 4; thence
North 58°39'West, 100.00 feet distant to Corner No. 1, the place of beginning.
PARCEL 2:
Being a tract of land lying in the Southwest Quarter of the Southwest Quarter of Section 5,
Township 48 North, Range 2 East, Boise Meridian, Shoshone County, State of Idaho and
being more particularly described as follows:
Using an astronomic meridian and beginning at Corner No. 1, identical with Corner No. 1 of
the Boylan Tract, from whence the Southwest corner of said Section 5 bears North 88°54.5'
West, 285.00 feet distant; thence
North 0°12'East, 50.01 feet distant to Corner No. 2; thence
South 88°54.5'East, 264.38 feet distant to Corner No. 3; thence
South 20°33.2'West, 53.03 feet distant to Corner No. 4; thence
North 88°54.5' West, 245.93 feet distant to Corner No. 1, the place of beginning.
EXCEPT a strip of land Southeasterly of a line parallel with and 30.00 feet Northwesterly
from the following described centerline of Division Street Project No. RS-5750(2) Highway
Survey as shown on the plans thereof on file in the office of the County Commissioners of
Shoshone County, Idaho and being a portion of the
Southwest Quarter of Section 5 and Northwest Quarter of Section 8, all in Township 48
North, Range 2 East, Boise Meridian and described as follows:
Beginning at Station 72+74 of said Division Street Project No. RS-5750(2) Highway Survey

Page 1                                          ID_NOTS

EXHIBIT
C

which bears 36°00'19"West, 7433.92 feet from City of Pinehurst Monument Station
"Pine";
thence
Southwesterly along a curve to the left 201 feet, more or less, said curve having a
central
angle of 10°03'00", a radius of 1,145.92 feet tangents of 100.76 feet and a long chord of
200.74 feet bearing South 22°11'06"West to a point of ending of curve marking Station
74+75 of said Highway Survey.
PARCEL 3:
Being a tract of land lying in the Northwest Quarter of the Northwest Quarter of Section
8,
Township 48 North, Range 2 East, Boise Meridian, Shoshone County, State of Idaho
and
being more particularly described as follows:
Beginning at Corner No. 1, a steel pin on the East dike of Pine creek, from whence the
Northwest Corner of Section 8, Township 48 North, Range 2 East, B.M., bears North
88°45'30"West, 390.26 feet distant; thence
South 88°54'30"East along the North Line of said Section 8, 350.00 feet to Corner No.
2, a
steel pin; thence
South 18°00'West along the Pine Creek Highway right-of-way, 156.78 feet distant to
Corner
No. 3, a steel pin; thence
North88°54'30"West, 295.00 feet distant to Corner No. 4, a steel pin; thence
North 02°29'40"West along the East dike of Pine Creek, 150.30 feet distant to Corner
No. 1,
the place of beginning.
EXCEPT a strip of land Southeasterly of a line parallel with and 30.00 feet
Northwesterly
from the following described centerline of Division Street Project No RS-5750(2)
Highway
Survey as shown on the plans thereof on file in the office of the County Commissioners
of
Shoshone County, Idaho and being a portion of the Southwest Quarter of Section 5 and
Northwest Quarter of Section 8, all in Township 48 North, Range 2 East, Boise Meridian
and
described as follows:
Beginning at Station 72+74 of said Division Street Project No. RS-5750(2) Highway
Survey
which bears 36°00'19"West, 7433.92 feet from City of Pinehurst Monument Station
"Pine";
thence Southwesterly along a curve to the left 201 feet, more or less, said curve having
a
central angle of 10°03'00", a radius of 1,145.92 feet tangents of 100.76 feet and a long
chord of 200.74 feet bearing South 22°11'06"West to a point of ending of curve marking
Station 74+75 of said Highway Survey.


The Trustee has no knowledge of a more particular description of the above-referenced Property but, for
purposes of compliance with Section 60-113 of Idaho Code, the Trustee has been informed that the
address of 1004 & 1008 S. DIVISION STREET , PINEHURST, ID 83850, is sometimes associated with
said real property.

Said sale will be made without covenant or warranty regarding title, possession or encumbrances to satisfy the obligation secured by and pursuant to the power of sale conferred in the Deed of Trust executed by NEW HOPE ASSEMBLY OF GOD, INC., AN IDAHO NONPROFIT CORPORATION, as Grantor, to RUDY L. PATRICK, as Trustee, for the benefit and security of ASSEMBLIES OF GOD LOAN FUND, A MISSOURI NON PROFIT CORPORATION, as Beneficiary, dated 6/17/2009, recorded 6/17/2009, under Instrument No. 452157,   Mortgage records of SHOSHONE County, IDAHO, the beneficial interest in which is presently held by ASSEMBLIES OF GOD LOAN FUND, A MISSOURI NON PROFIT CORPORATION.

THE ABOVE GRANTORS ARE NAMED TO COMPLY WITH SECTION 45-1506(4)(A), IDAHO CODE. NO REPRESENTATION IS MADE THAT THEY ARE, OR ARE NOT, PRESENTLY RESPONSIBLE FOR THIS OBLIGATION.

The default for which is sale is made is the failure to pay when due under the Deed of Trust Note dated 6/17/2009, FAILURE TO PAY THE PRINCIPAL BALANCE OF $194,051.23 PLUS ACCRUED INTEREST AND CHARGES AS SET FORTH, WHICH BECAME DUE AND PAYABLE BY REASON OF BENEFICIARY'S EXERCISE OF ITS RIGHT TO ACCELERATE THE LOAN SECURED BY SAID DEED OF TRUST, WHICH RIGHT OCCURRED UPON THE VIOLATION OF THE PROVISION OF THE DEED OF TRUST WHICH ALLOWS BENEFICIARY TO CALL ALL AMOUNTS DUE AND PAYABLE IN FULL UPON DEFAULT OF MONTHLY PAYMENTS.   THE BENEFICIARY MAY ELECT, IN ITS DISCRETION, TO EXERCISE ITS RIGHTS AND REMEDIES IN ANY MANNER PERMITTED UNDER THE UNIFORM COMMERICAL CODE, AS TO ALL OR SOME OF THE PERSONAL PROPERTY, FIXTURES AND OTHER GENERAL TANGIBLES AND INTANGIBLES MORE PARTICULARLY DESCRIBED IN THE DEED OF TRUST.

All delinquencies are now due, together with unpaid and accruing taxes, assessments, trustee's fees, attorney's fees, costs and advances made to protect the security associated with this foreclosure. The principal balance is $194,051.23, together with interest thereon at 8.750% per annum from 7/9/2012, until paid.

The Beneficiary elects to sell or cause the trust property to be sold to satisfy said obligation.

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to b heard as to those objections if they bring a lawsuit to restrain the same.

DATED:  9/6/2012.

Trustee Services

Pioneer Title Company of Ada County, dba Pioneer Lender

Trustee

By _____

Amy L. Bowles, Assistant Secretary
c/o Pioneer Lender Trustee Services
8151 W. Rifleman Street
Boise, ID 83704 Phone: 888-342-2510

470833

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

**ASSEMBLIES OF GOD LOAN FUND, A MISSOURI NON PROFIT CORPORATION**
1661 NORTHBOONVILLE AVE
SPRINGFIELD, MO 65803

428580

Trustee's Sale No: ID-PRV-12002535

## TRUSTEE'S DEED

**Pioneer Title Company of Ada County, dba Pioneer Lender Trustee Services**, as Successor Trustee under the Deed of or Transfer in Trust hereinafter particularly described, does hereby Bargain, Sell and Convey, without warranty, to ASSEMBLIES OF GOD LOAN FUND, A MISSOURI NON PROFIT CORPORATION , (herein called Grantee), whose address is 1661 NORTHBOONVILLE AVE , SPRINGFIELD, MO 65803, all of the real property situate in the County of SHOSHONE, State of Idaho, described as follows:

Real property in the County of Shoshone, State of Idaho, described as follows:
PARCEL 1:
Being a tract of land lying in the Southwest Quarter of the Southwest Quarter of Section 5,
Township 48 North, Range 2 East, Boise Meridian, Shoshone County, State of Idaho and
being more particularly described as follows:
Using an astronomic meridian and beginning at Corner No. 1 from whence the Southwest
corner of said Section bears
South 65°34.7'West, 421.6 feet distant; thence
North 31°21'East, 192.00 feet distant to Corner No. 2; thence
South 58°39'East, 100.00 feet distant to Corner No. 3; thence
South 31°21'West, 192.00 feet distant to Corner No. 4; thence
North 58°39'West, 100.00 feet distant to Corner No. 1, the place of beginning.
PARCEL 2:
Being a tract of land lying in the Southwest Quarter of the Southwest Quarter of Section 5,
Township 48 North, Range 2 East, Boise Meridian, Shoshone County, State of Idaho and
being more particularly described as follows:
Using an astronomic meridian and beginning at Corner No. 1, identical with Corner No. 1 of
the Boylan Tract, from whence the Southwest corner of said Section 5 bears North 88°54.5'
West, 285.00 feet distant; thence
North 0°12'East, 50.01 feet distant to Corner No. 2; thence
South 88°54.5'East, 264.38 feet distant to Corner No. 3; thence
South 20°33.2'West, 53.03 feet distant to Corner No. 4; thence
North 88°54.5' West, 245.93 feet distant to Corner No. 1, the place of beginning.
EXCEPT a strip of land Southeasterly of a line parallel with and 30.00 feet Northwesterly

ID TRUSTEES DEED

**EXHIBIT**
**D**

470833

from the following described centerline of Division Street Project No. RS-5750(2) Highway
Survey as shown on the plans thereof on file in the office of the County Commissioners of
Shoshone County, Idaho and being a portion of the
Southwest Quarter of Section 5 and Northwest Quarter of Section 8, all in Township 48
North, Range 2 East, Boise Meridian and described as follows:
Beginning at Station 72+74 of said Division Street Project No. RS-5750(2) Highway Survey
which bears 36°00'19"West, 7433.92 feet from City of Pinehurst Monument Station "Pine";
thence
Southwesterly along a curve to the left 201 feet, more or less, said curve having a central
angle of 10°03'00", a radius of 1,145.92 feet tangents of 100.76 feet and a long chord of
200.74 feet bearing South 22°11'06"West to a point of ending of curve marking Station
74+75 of said Highway Survey.
PARCEL 3:
Being a tract of land lying in the Northwest Quarter of the Northwest Quarter of Section 8,
Township 48 North, Range 2 East, Boise Meridian, Shoshone County, State of Idaho and
being more particularly described as follows:
Beginning at Corner No. 1, a steel pin on the East dike of Pine creek, from whence the
Northwest Corner of Section 8, Township 48 North, Range 2 East, B.M., bears North
88°45'30"West, 390.26 feet distant; thence
South 88°54'30"East along the North Line of said Section 8, 350.00 feet to Corner No. 2, a
steel pin; thence
South 18°00'West along the Pine Creek Highway right-of-way, 156.78 feet distant to Corner
No. 3, a steel pin; thence
North88°54'30"West, 295.00 feet distant to Corner No. 4, a steel pin; thence
North 02°29'40"West along the East dike of Pine Creek, 150.30 feet distant to Corner No. 1,
the place of beginning.
EXCEPT a strip of land Southeasterly of a line parallel with and 30.00 feet Northwesterly
from the following described centerline of Division Street Project No RS-5750(2) Highway
Survey as shown on the plans thereof on file in the office of the County Commissioners of
Shoshone County, Idaho and being a portion of the Southwest Quarter of Section 5 and
Northwest Quarter of Section 8, all in Township 48 North, Range 2 East, Boise Meridian and
described as follows:
Beginning at Station 72+74 of said Division Street Project No. RS-5750(2) Highway Survey
which bears 36°00'19"West, 7433.92 feet from City of Pinehurst Monument Station "Pine";
thence Southwesterly along a curve to the left 201 feet, more or less, said curve having a
central angle of 10°03'00", a radius of 1,145.92 feet tangents of 100.76 feet and a long
chord of 200.74 feet bearing South 22°11'06"West to a point of ending of curve marking

ID TRUSTEES DEED

470835

Station 74+75 of said Highway Survey.

This conveyance is made pursuant to the powers conferred upon Trustee by the Deed of Trust between NEW HOPE ASSEMBLY OF GOD, INC., AN IDAHO NONPROFIT CORPORATION, as Grantor(s), to RUDY L. PATRICK, as Trustee, in favor of ASSEMBLIES OF GOD LOAN FUND, A MISSOURI NON PROFIT CORPORATION, as Beneficiary, dated 6/17/2009, recorded 6/17/2009 , under Instrument No. 452157, Mortgage records of SHOSHONE County, IDAHO, and after the fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance as follows:

(a) Default occurred in the obligations for which said Deed of Trust was given as security and the beneficiary made demand upon the said Trustee to sell said property pursuant to the terms of said Deed of Trust.  Notice of Default was recorded as Instrument No. 468890, SHOSHONE County, Idaho Mortgage Records and in the office of the Recorder of each other county in which the property described in said Deed of Trust, or any part thereof is situated, the nature of such default being as set forth in said Notice of Default.  Such default still existed at the time of sale.

(b) After recordation of said Notice of Default, Trustee gave notice of the time and place of the sale of said property by registered or certified mail, by personal service upon the occupants of said real property, by posting in a conspicuous place on said premises and by publishing in a newspaper of general circulation in each of the counties in which the property is situated as more fully appears in affidavits recorded at least 20 days prior to date of sale as Instrument No. 469888, Instrument No. 469889, and Instrument No. 469890, SHOSHONE County, Idaho Mortgage Records.

(c) The provisions, recitals and contents of the Notice of Default referred to in paragraph (a) supra an of the Affidavits referred to in paragraph (b) supra shall be and they are hereby incorporated herein and made an integral part hereof for all purposes as though set forth herein at length.

(d) All requirements of law regarding the mailing, personal service, posting, publication and recording of Notice of Default,  and Notice of Sale,  and of all other notices have been complied with.

(e) Not less than 120 days elapsed between the giving of Notice of Sale by registered or certified mail and the sale of said property.

(f) Trustee, on January 11, 2013, at 11:00 AM, at FIRST AMERICAN TITLE COMPANY, 111 MAIN STREET, KELLOGG, ID, at public auction, in one parcel, struck off to Grantee, being the highest bidder therefor, the property herein described, for the $205,394.51, subject however to all prior liens and encumbrances.  No person or corporation offered to take any part of said property less than the whole thereof for the amount of principal, interest, advances and costs.

DATED:  1/11/2013.

Trustee Services

Pioneer Title Company of Ada County, dba Pioneer Lender

Trustee

By _____
Amy L. Bowles, Assistant Secretary

STATE OF Idaho       )
                     ) ss.
COUNTY OF Ada        )

On 1/11/2013, before me a Notary Public in and for said State, personally appeared Amy L. Bowles, known and identified to me to be the Assistant Secretary of the corporation who executed this instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_____
NOTARY PUBLIC in and for the State of Idaho
residing at:  Boise, ID
My commission expires:  4/18/2014



470833

**Instrument # 470833**
WALLACE,SHOSHONE COUNTY, IDAHO
1-16-2013        01:42:00  No. of Pages: 4
Recorded for : FIRST AMERICAN TITLE CO.
PEGGY DELANGE-WHITE              Fee: 19.00
Ex-Officio Recorder  Deputy _____
Index to: TRUSTEES DEED

2013 JAN 16 PM 1 42