Tyler S. Wirick
ISBA #7267
Law Offices of Tyler S. Wirick, PLLC
250 Northwest Blvd., STE 107A
Coeur d' Alene, ID 83814
Telephone: (208) 292-4200
Facsimile: (208) 292-4201
Tyler.wirick@wiricklaw.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

IN THE MATTER OF:

New Hope Assembly of God, Inc.,

Case No.  13-20025-TLM

Chapter 11

Debtor in Possession.

## NEW HOPE ASSEMBLY OF GOD, INC.'s DISCLOSURE STATEMENT AND PLAN SUMMARY

### I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of NEW HOPE ASSEMBLY OF GOD, INC. (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Chapter 11 Plan (the "Plan") filed by debtor on the same date. A full copy of the Plan is attached to this Disclosure Statement as Exhibit C. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages 5-7 of this Disclosure Statement.

### A.    Purpose of this document

This Disclosure Statement describes:

The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (i.e.,

**NEW HOPE ASSEMBLY OF GOD INC.'s DISCLOSURE STATEMENT**
1

what you will receive on your claim or equity interest if the Plan is confirmed),

- Who can vote on or object to the Plan, What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

- Why Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

## II.   BACKGROUND

### A. Description and History of Debtor's Business

**Description:** New Hope Assembly of God ("New Hope") owns and operates a non-profit church and related ministries associates with the Northwest Council of the Assemblies of God. The business of New Hope is to provide spiritual and social services to its members, the members of the community, and, through its outreach programs, provide services in various parts of the world.

New Hope is operated through its board of directors, with Ralph Moats, the pastor of the church, acting as the president of the board. Income is derived from two (2) sources: members' tithes and offerings and rents from residential units.

**History and Events Leading to Chapter 11 Filing:** New Hope has been a fixture in the Silver Valley of Northern Idaho for nearly 60 years. Currently New Hope owns and operates a large church building as well as a parsonage and three (3) rental properties. The properties are located in Pinehurst, Idaho at 1002 S. Division, 1004 S. Division, 1008 S. Division, and 1010 S. Division.

New Hope has operated for nearly 60 years. However, in recent years it has seen a decline in members. Membership decline was due to the poor economy of the

**NEW HOPE ASSEMBLY OF GOD INC.'s DISCLOSURE STATEMENT**
2

Silver Valley and the death of a number of elderly members. It appears that the decline in membership has stabilized, as attendance numbers and revenue have remained relatively stable over the past 1 – 2 years.

As New Hope saw its numbers decrease, it looked for ways to increase its revenues, including purchasing rental properties and opening a day care. The purchase of properties proved to provide a stable income stream. The daycare did not. Eventually the Board of Directors decided to close the daycare. However, the financial damage was done, and New Hope was not able to pay its obligations to its primary mortgage lender for a number of months.

**Current Outlook:** Revenues for the church have stabilized and a chapter 11 plan is feasible. Additionally, it is anticipated that new membership will increase as long as the mining industry in the Silver Valley also continues to increase.

### B. Insiders of the Debtor

There are no insiders of the Debtor.

### C. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### D. Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit A. The valuation is based upon Debtor's estimates. A summary of projected and actual income and expenses filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit B.

## III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF NEW HOPE ASSEMBLY OF GOD INC.'s DISCLOSURE STATEMENT

3

## CLAIM AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

      1    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following is a list of Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

    a.    Quarterly fees to United States Trustee: shall be paid as required estimated to be $650 per quarter

    b.    Estimated post-petition attorney's fees: $5,000. Any such fees must be approved by the court after notice and hearing.

These fees will be paid from the ongoing business receipts, after confirmation of the plan.

    2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §

**NEW HOPE ASSEMBLY OF GOD INC.'s DISCLOSURE STATEMENT**
4

507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following lists the Debtor's estimated §507(a)(8) priority tax claims and their proposed treatment under the Plan:

Shoshone County, $7533.83

Claims of Shoshone County shall be treated as follows:

a.      Shoshone County shall be paid in full within 60 months of the date of filing the bankruptcy plan.

b.      If the debtor or successor in interest fails to make payment of any tax to Shoshone County within 30 days of the due date of such deposit or payment, or if the debtor fails to make any payment under the Plan, then the Shoshone County may declare that the debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the Shoshone County of the right to declare that the successor in interest or debtor is in default.

c.      If Shoshone County declares the debtor or the successor in interest to be in default of the debtor's obligations under the Plan, then the entire pre-petition liability shall become due and payable immediately upon written demand to the debtor or the successor in interest.

d.      If full payment is not made within 14 days of such demand, or other arrangement agreed to in writing, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The debtors and all the debtors' property shall be liable for such unpaid liabilities as if no bankruptcy had occurred.

e.      Setoff: Shoshone County may setoff pre-petition overpayments against pre-petition tax balances due from the debtors as allowable under law, notwithstanding any contrary provisions in the plan. Priority tax claims, if any, shall be paid in the amount set forth for each priority creditor at the rate of interest and within 60 months of the date of filing of this Chapter 11 proceeding. **PAYMENTS SHALL COMMENCE IN THE MONTH FOLLOWING CONFIRMATION OF THE PLAN.**

### C. Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**NEW HOPE ASSEMBLY OF GOD INC.'s DISCLOSURE STATEMENT**

5

### 1. *Class One: Assemblies of God Loan Fund*

The allowed fully secured claim of Assemblies of God Loan Fund ("AG") under the Promissory Note, Security Agreement, Deed of Trust and Assignment of Rents dated June 17, 2009, and all modifications thereof (collectively referred to as "Note 1") shall be treated as follows: AG will retain its liens and security interests upon the real and personal property of the Debtor, the debtor in possession, the reorganized Debtor, and any non-debtors, and all of its rights and interests under its agreements with the Debtor and any non-debtors except as specifically modified herein. The agreements between the Debtor, any non-debtors and AG, including, but not limited to Note I, shall remain in full force and effect and shall be binding on the reorganized debtor, except as modified by this Plan, whether or not the Debtor is granted a discharge as described in paragraph V. below.

Commencing with the payment due in the first month after confirmation, the balance of the obligation owed to AG under Note I, including all principal, and all pre-petition, pre-confirmation and post confirmation unpaid interest, late fees, costs and attorney fees, will be paid in monthly installments as calculated by AG based on the amortization of said obligation over 30 years from the date of confirmation with interest at the rate of 5.00% per annum computed from the date of confirmation of this plan. Debtors estimates that said payment will be approximately $1,100.00 per month. The Debtor shall continue making said monthly payments to AG for the succeeding three hundred sixty (360) months.

In the event of a default under the Plan, failure to make any payment required by the Plan or a default of any provision of the Debtor's and non-debtors' agreements with AG, AG shall be entitled to exercise all remedies permitted under its agreements with the Debtor and any non-debtors and under applicable non-bankruptcy law without having to reopen this bankruptcy case or otherwise seek relief from the Court.

### 2. *Class Two: General Unsecured Creditors*

Unsecured creditors are required to be paid an amount that would be received by such creditor if the Debtor were liquidated under Chapter 7 of the Code. The value of assets of the Debtor which would be available to unsecured creditors consists of the value of assets which are not exempt under Idaho law and which are not subject to liens or security interests of (secured) creditors, or in which the Debtor has equity above the value of the liens of any secured creditor. All debtor's property is subject to a security interest or other lien, thus there would be no distribution

**NEW HOPE ASSEMBLY OF GOD INC.'s DISCLOSURE STATEMENT**

to unsecured creditors in the event of a liquidation.

Debtor proposes to pay its unsecured creditors in full in monthly installments including accrued interest at the rate of 3.25% per annum amortizing the balance including interest over the subsequent 72 months after confirmation computed from the date of filing this Chapter 11 proceeding.

Therefore, unsecured creditors will receive 100% of the amount due.

### D. Means of Implementing the Plan

#### 1. *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

Income from the tithes, offerings, and rents.

### E. Risk Factor

The proposed Plan has the following risks: The state of the economy is uncertain. If the price of metals decreases substantially and the economy in the Silver Valley worsens, Debtors could face a reduction in membership and donations. Furthermore, if AG Financial is unwilling to modify the repayment schedules, it is likely that the unsecured creditors will receive nothing.

### F. Executory Contracts and Unexpired Leases

Debtor will assume its contractual agreements with Ralph Moats and Sandra Moats to provide pastoral services to the church.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

### IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting votes of insiders; the Plan must distribute to each

**NEW HOPE ASSEMBLY OF GOD INC.'s DISCLOSURE STATEMENT**

7

creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that all classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

#### 1. *What Is An Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

#### 2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is

**NEW HOPE ASSEMBLY OF GOD INC.'s DISCLOSURE STATEMENT**

8

considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3    *Who is Not Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

*Even if You are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement*

### 4    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in pail as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

## B. Votes Necessary to Confirm Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

### 1. *Votes Necessary for a Class to Accept the Plan*

**NEW HOPE ASSEMBLY OF GOD INC.'s DISCLOSURE STATEMENT**

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2       *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by §1129(b) of the Code. A Plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirement for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.*

C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.

D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

*Ability to Make Future Plan Payments and Operate Without Further Reorganization.*

**NEW HOPE ASSEMBLY OF GOD INC.'s DISCLOSURE STATEMENT**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit B.

The Plan Proponent's financial projections show that the Debtor will have sufficient cash flow, including liquidation of unimproved real property to fund the Plan, as shown on the spreadsheet attached as Exhibit B. Historically income declines in the winter months. *You Should Consult with Your Accountant or other Financial Advisor if you Have any Questions Pertaining to These Projections.*

## V.    EFFECT OF CONFIRMATION OF PLAN
### A.  Discharge of Debtor

Discharge. On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in §1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (1) though(iii) of die preceding sentence.

### B. Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

Upon request of the Debtor, the United States Trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of the payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, of (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

**NEW HOPE ASSEMBLY OF GOD INC.'s DISCLOSURE STATEMENT**

**C. Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

/s/ *Tyler S. Wirick* _____  _____  _____
Tyler S. Wirick
Attorney for the Plan Proponent

## CERTIFICATE OF ELECTRONIC FILING

I HEREBY CERTIFY that on the 13th day of May, 2013, I electronically filed the foregoing Disclosure with the Clerk of the Court, using the CM/ECF system, which sent a Notice of Electronic Filing to the following:

United States Trustee
720 E. Park Blvd #220
Boise, ID 83712
Telephone: (208) 334-1300
Facsimile: (208) 334-9756
ustp.region18.bs.ecf@usdoj.gov

Samuel A. Diddle
David M. Swartley
Eberle, Berlin, Kading, Turnbow
& McKlveen, CHTD.
PO Box 1368
Boise, ID 83701
Telephone: (208) 344-8535
Facsimile (208) 344-8542
sdiddle@eberle.com

I FURTHER CERTIFY that on the 28th day of May, 2013, I mailed the foregoing Disclosure via First Class Mail, postage prepaid, to the following:

Loren Padula
123 W. Riverside
Kellogg, ID 83837

Bank of America
4325 17th Ave. S
Fargo, ND 58125

Shoshone County
700 Bank St.
STE 110
Wallace, ID 83873-2356

/s/ Tyler S. Wirick
Tyler S. Wirick

**NEW HOPE ASSEMBLY OF GOD INC.'s DISCLOSURE STATEMENT**

# EXHIBIT A

B6A (Official Form 6A) (12/07)

In re    **Tiffany Jean Monroe,**
      **Paul Keary Monroe**

Case No. _____

_____
Debtors

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a
cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for
the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W,"
"J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under
"Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and
Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity
claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or
if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Mobile Home**<br>Location: 201 Ohio St, Pinehurst ID 83850 | Fee simple | C | 8,000.00 | 0.00 |

|  |  |  |
|---|---|---|
| Sub-Total > | 8,000.00 | (Total of this page) |
| Total > | 8,000.00 | |

   **0**    continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2013 - CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

B6B (Official Form 6B) (12/07)

In re    **Tiffany Jean Monroe,**
**Paul Keary Monroe**

Case No._____

_____
Debtors

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. **List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand | | **Cash** | C | 150.00 |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Spokane Teachers Credit Union**<br>**106 W Nora Ave, Spokane, WA 99205** | C | 0.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | | **Deposit Avista Utilities**<br>**1411 E Mission Ave, Spokane , WA 99252** | C | 250.00 |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | | **Couch $75, Chair $40, End Tables $10, Television $200**<br>**Location: 201 Ohio St, Pinehurst ID 83850** | C | 325.00 |
| | | **VCR/DVD $5, Bookshelf $5, Lamps $10, Dinette $10**<br>**Location: 201 Ohio St, Pinehurst ID 83850** | C | 30.00 |
| | | **Beds $200, Dresser $30, Washer and Dryer $200**<br>**Location: 201 Ohio St, Pinehurst ID 83850** | C | 430.00 |
| | | **Microwave $5, Refrigerator $40, Stove $50,**<br>**Computer $150**<br>**Location: 201 Ohio St, Pinehurst ID 83850** | C | 245.00 |
| | | **Lawn Mower $150, Video Games and System $300**<br>**Location: 201 Ohio St, Pinehurst ID 83850** | C | 450.00 |
| | | **Patio Furniture $20, Decor $75**<br>**Location: 201 Ohio St, Pinehurst ID 83850** | C | 95.00 |
| | | **Home Tools**<br>**Location: 201 Ohio St, Pinehurst ID 83850** | C | 400.00 |
| | | **Construction Tools**<br>**Location: 201 Ohio St, Pinehurst ID 83850** | C | 300.00 |

Sub-Total >     **2,675.00**
(Total of this page)

**3**    continuation sheets attached to the Schedule of Personal Property

Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    **Tiffany Jean Monroe,**
         **Paul Keary Monroe**

Case No._____

Debtors

## SCHEDULE B – PERSONAL PROPERTY
(Continuation Sheet)

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | | Clothing $400 Location: 201 Ohio St, Pinehurst ID 83850 | C | 400.00 |
| 7. | Furs and jewelry. | | Mans Gold Wedding Ring $200, Ladies Wedding Ring $100 Location: 201 Ohio St, Pinehurst ID 83850 | C | 300.00 |
| | | | Necklaces and Watches $100, Diamond Earrings $50, Pearl Necklace and Bracelet $50 Location: 201 Ohio St, Pinehurst ID 83850 | C | 200.00 |
| 8. | Firearms and sports, photographic, and other hobby equipment. | | 22 Remington Rifle Location: 201 Ohio St, Pinehurst ID 83850 | C | 200.00 |
| | | | Camping Equipment $300, Fishing Equipment $200 Location: 201 Ohio St, Pinehurst ID 83850 | C | 500.00 |
| | | | Snow Boarding $225, Bicycles $75 Location: 201 Ohio St, Pinehurst ID 83850 | C | 300.00 |
| | | | Boating Equipment $150, Photography $200 Location: 201 Ohio St, Pinehurst ID 83850 | C | 350.00 |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. | Annuities. Itemize and name each issuer. | X | | | |
| 11. | Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. | Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | Retirement- Fidelity | C | 32,693.00 |

Sub-Total >       34,943.00
(Total of this page)

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2013 - CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    **Tiffany Jean Monroe,**
          **Paul Keary Monroe**

Case No. _____

Debtors

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |

Sub-Total >          0.00
(Total of this page)

Sheet __2__ of __3__ continuation sheets attached
to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont.

In re  **Tiffany Jean Monroe,**
**Paul Keary Monroe**

Case No. _____

_____

Debtors

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **2000 Chevy Truck** Location: 201 Ohio St, Pinehurst ID 83850 | C | 4,000.00 |
| | | **2006 Mazda** Location: 201 Ohio St, Pinehurst ID 83850 | C | 7,000.00 |
| | | **ATV Cat 650** Location: 201 Ohio St, Pinehurst ID 83850 | C | 2,700.00 |
| | | **Camper Trailer** Location: 201 Ohio St, Pinehurst ID 83850 | C | 150.00 |
| 26. Boats, motors, and accessories. | | **1997 Bayliner** Location: 201 Ohio St, Pinehurst ID 83850 | C | 3,600.00 |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

Sub-Total >     17,450.00
(Total of this page)
Total >     55,068.00

Sheet  **3**  of  **3**  continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2013 - CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

# EXHIBIT B

Case 13-20025-TLM   Doc 35   Filed 05/13/13   Entered 05/13/13 18:04:08   Desc Main
Document   Page 21 of 29

New Hope Assembly of God
Income and Expense by Year
January – December

| | 2012 | 2011 | 2010 | 2009 | 2008 |
|---|---|---|---|---|---|
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INCOME | 71,912.83 | 78,437.70 | 84,857.47 | 79,853.60 | 101,131.40 |
| INTEREST INCOME | 0.00 | 0.00 | 0.00 | 0.00 | 0.01 |
| MISCELLANEOUS INCOME | 20,209.15 | 21,760.00 | 16,020.00 | 16,993.46 | 20,905.95 |
| Subtotal Income | 92,121.98 | 100,197.70 | 100,877.47 | 96,847.06 | 122,037.36 |
| TOTAL INCOME | 92,121.98 | 100,197.70 | 100,877.47 | 96,847.06 | 122,037.36 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| EXPENSES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| FIXED EXPENSES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| PASTORAL STAFF | 35,452.48 | 37,058.60 | 36,989.65 | 38,197.54 | 23,426.55 |
| SUPPORT STAFF | 2,401.00 | 488.39 | -720.00 | 11,510.22 | 3,047.73 |
| ADMINISTRATIVE EXPENSE | 10,623.52 | 3,403.55 | 7,905.22 | 11,406.18 | 7,572.35 |
| BUILDING & GROUNDS | 15,493.66 | 30,060.21 | 29,866.66 | 43,171.86 | 35,606.56 |
| VEHICLES | 3,370.63 | 3,738.12 | 4,550.55 | 4,295.57 | 3,217.00 |
| Subtotal Fixed Expenses | 67,341.29 | 74,744.87 | 78,592.08 | 108,581.37 | 72,870.19 |
| DEPARTMENTS/COMMITTEES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| MISSIONS DEPARTMENT | 9,040.37 | 8,310.14 | 9,174.19 | 7,885.59 | 10,078.19 |
| CHRISTIAN EDUCATION | 568.18 | 277.08 | 199.15 | 45.68 | 495.07 |
| PARSONAGE ACCOUNT | 5,348.31 | 5,751.88 | 3,601.85 | 5,962.43 | 593.55 |
| EVANGELISM/OUTREACH | 996.48 | 1,478.98 | 2,848.90 | 1,002.98 | 13,645.13 |
| RECREATION | 1,542.20 | 248.62 | 2,499.05 | 1,188.35 | 2,507.93 |
| Subtotal Departments/committees | 17,495.54 | 16,056.70 | 18,323.14 | 16,085.03 | 27,319.87 |
| OTHER EXPENSES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| CONVENTIONS & SEMINARS | 2,621.23 | 2,855.16 | 4,075.43 | 8,491.73 | 5,954.10 |
| Subtotal Other Expenses | 2,621.23 | 2,855.16 | 4,075.43 | 8,491.73 | 5,954.10 |
| Subtotal Expenses | 87,458.06 | 93,666.73 | 100,990.65 | 131,158.13 | 106,144.16 |
| DAYCARE | 578.60 | 611.64 | 0.00 | 399.39 | 741.05 |
| TOTAL EXPENSES | 88,036.66 | 94,278.37 | 100,990.65 | 131,557.52 | 106,885.21 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TRANSFER ACCOUNTS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TRANSFER FROM OTHER FUNDS | 0.00 | 0.00 | 0.00 | 0.00 | -1,003.26 |
| TOTAL TRANSFERS | 0.00 | 0.00 | 0.00 | 0.00 | -1,003.26 |
| EXCESS INCOME/EXPENSE | 4,085.32 | 5,919.33 | -113.18 | -34,710.46 | -14,148.89 |

# EXHIBIT C

Tyler S. Wirick
ISBA #7267
Law Offices of Tyler S. Wirick, PLLC
250 Northwest Blvd., STE 107A
Coeur d' Alene, ID 83814
Telephone: (208) 292-4200
Facsimile: (208) 292-4201
Tyler.wirick@wiricklaw.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

IN THE MATTER OF:

New Hope Assembly of God, Inc.,

Debtor in Possession.

Case No. 13-20025-TLM

Chapter 11

## FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF NEW HOPE ASSEMBLY OF GOD, INC.

### ARTICLE I

### SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of New Assembly of God Church, Inc. (the "Debtor") from cash flow from operations, or future income.

This Plan provides for one class of secured claims; and one class of unsecured claims. Unsecured creditors holding allowed claims will receive distributions equaling 100% of their allowed amount plus interest at 3.25% per annum. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Article II of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish

CHAPTER 11 PLAN OF REORGANIZATION OF NEW HOPE ASSEMBLY OF GOD, INC. - 1

to consult one.)

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     There are no claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2),and priority tax claims under § 507(a)(8)).

2.2     There are no claims of the Internal Revenue Services and/or Idaho State Tax Commission, but Shoshone County has a claim in the amount of $7533.83. The claim of Shoshone County shall be paid in full within 60 months of the date of filing the bankruptcy petition.

2.21. If the debtor or successor in interest fails to make any deposits of any currently accruing employment tax liability or fails to make payment of any tax to the internal Revenue Service within 30 days of the due date of such deposit or payment, or if the debtor or the successor in interest fails to file any required federal tax return within 30 days of the due date of such return, or if the debtor fails to make any payment under the Plan, then the Shoshone County may declare that the debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the Shoshone County of the right to declare that the successor in interest or debtor is in default.

2.22 If Shoshone County declares the debtor or the successor in interest to be in default of the debtor's obligations under the Plan, then the entire pre-petition liability shall become due and payable immediately upon written demand to the debtor or the successor in interest.

2.23 If full payment is not made within 14 days of such demand, or other arrangement agreed to in writing, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The debtors and all the debtors' property shall be liable for such unpaid liabilities as if no bankruptcy had occurred.

2.24 Setoff: Shoshone County may setoff pre-petition overpayments against pre-petition tax balances due from the debtors as allowable under law, notwithstanding any contrary provisions in the plan. Priority tax claims, if any, shall be paid in the amount set forth for each priority creditor at the rate of interest and within 60 months of the date of filing of this Chapter II proceeding. **PAYMENTS SHALL COMMENCE IN THE MONTH FOLLOWING CONFIRMATION OF THE PLAN.**

CHAPTER 11 PLAN OF REORGANIZATION OF NEW HOPE ASSEMBLY OF GOD, INC - 2

2.3.1 United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

2.3.2 Fees for the attorney's involved shall be approved by the court and paid from operating revenues. Post petition fees are estimated to be approximately $5,000.00.

### 2.4 Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

### 2.4.1 Class One: Assemblies of God Loan Fund

The allowed fully secured claim of Assemblies of God Loan Fund ("AG") under the Promissory Note, Security Agreement, Deed of Trust and Assignment of Rents dated June 17, 2009, and all modifications thereof (collectively referred to as "Note 1") shall be treated as follows: AG will retain its liens and security interests upon the real and personal property of the Debtor, the debtor in possession, the reorganized Debtor, and any non-debtors, and all of its rights and interests under its agreements with the Debtor and any non-debtors except as specifically modified herein. The agreements between the Debtor, any non-debtors and AG, including, but not limited to Note 1, shall remain in full force and effect and shall be binding on the reorganized debtor, except as modified by this Plan, whether or not the Debtor is granted a discharge as described in paragraph V. below.

Commencing with the payment due in the first month after confirmation, the balance of the obligation owed to AG under Note 1, including all principal, and all pre-petition, pre-confirmation and post confirmation unpaid interest, late fees, costs and attorney fees, will be paid in monthly installments as calculated by AG based on the amortization of said obligation over 30 years from the date of confirmation with interest at the rate of 5.00% per annum computed from the date of confirmation of this plan. Debtors estimates that said payment will be approximately $1,100.00 per month. The Debtor shall continue making said monthly payments to AG for the succeeding three hundred sixty (360) months.

In the event of a default under the Plan, failure to make any payment required by the Plan or a

**CHAPTER 11 PLAN OF REORGANIZATION OF NEW HOPE ASSEMBLY OF GOD, INC. - 3**

default of any provision of the Debtor's and non-debtors' agreements with AG, AG shall be entitled to exercise all remedies permitted under its agreements with the Debtor and any non-debtors and under applicable non-bankruptcy law without having to reopen this bankruptcy case or otherwise seek relief from the Court.

### 2.5. General Unsecured Claims.

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code. The following identifies the Plan's proposed treatment of unsecured creditors:

### 2.5.1 Class Two: General Unsecured Creditors

Unsecured creditors are required to be paid an amount that would be received by such creditor if the Debtor were liquidated under Chapter 7 of the Code. The value of assets of the Debtor which would be available to unsecured creditors consists of the value of assets which are not exempt under Idaho law and which are not subject to liens or security interests of (secured) creditors, or in which the Debtor has equity above the value of the liens of any secured creditor. All debtor's property is subject to a security interest or other lien, thus there would be no distribution to unsecured creditors in the event of a liquidation.

2.5.2 Debtor proposes to pay its unsecured creditors in full in monthly installments including accrued interest at the rate of 3.25% per annum amortizing the balance including interest over the subsequent 72 months after confirmation computed from the date of filing this Chapter II proceeding.

Therefore, unsecured creditors should receive approximately 100% of the amount due.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

3.1    Claims and interests shall be treated as follows under this Plan:

Each secured claim shall be allowed in an amount to be determined by the court or in accordance with a proof of claim or the amount set forth in the schedules filed by the debtor.

Each class of secured creditors shall receive the amount set forth for the number of months set forth. After distributions pursuant to the confirmed plan have been started, debtor will seek to close the case. For long-term debt, exceeding five years the case will be reopened upon completion of payments to each long-term creditor.

CHAPTER 11 PLAN OF REORGANIZATION OF NEW HOPE ASSEMBLY OF GOD, INC - 4

## ARTICLE IV

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

4.1    Disputed Claim. There are no disputed claims.

## ARTICLE V

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1    Assumed Executory Contracts and Unexpired Leases.

Debtor will assume its contractual agreement with each of its tenants. These are income-generating leases. Debtor will assume its agreement with Ralph Moats and Sandra Moats for pastoral services. Debtor will also assume its agreement with West Valley Realty. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1 The church will continue to be operated and it is expected that revenues will be sufficient to fund the plan.

## ARTICLE VII

## GENERAL PROVISIONS

7.1    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

7.2   Effective Date of Plan. The effective date of this Plan is the fourteenth day in the month following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.3 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.4 Binding Effect. The rights and obligations of any entity named or referred to in this

CHAPTER 11 PLAN OF REORGANIZATION OF NEW HOPE ASSEMBLY OF GOD, INC - 5

Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.5 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.6 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Idaho govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.7 Corporate Governance. The debtor will be prohibited from issuing nonvoting securities. There is only one class of voting securities so no class have preference over another class of securities.

## ARTICLE VIII

## NO DISCHARGE OF DEBTOR.

8.1 If the Debtor is a corporation and § 1141(d)(3) is not applicable.

On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

Respectfully submitted this 28th day of April, 2013

/s/ _Tyler S. Wirick_ ___ ___ ___ ___
Tyler S. Wirick
Attorney for the Plan Proponent

## CERTIFICATE OF ELECTRONIC FILING

I HEREBY CERTIFY that on the 13th day of May, 2013, I electronically filed the foregoing Chapter 11 Plan with the Clerk of the Court, using the CM/ECF system, which sent a Notice of Electronic Filing to the following:

United States Trustee
720 E. Park Blvd #220
Boise, ID 83712
Telephone: (208) 334-1300
Facsimile: (208) 334-9756
ustp.region18.bs.ecf@usdoj.gov

Samuel A. Diddle
David M. Swartley
Eberle, Berlin, Kading, Turnbow
& McKlveen, CHTD.
PO Box 1368
Boise, ID 83701
Telephone: (208) 344-8535
Facsimile (208) 344-8542
sdiddle@eberle.com

I FURTHER CERTIFY that on the 28th day of May, 2013, I mailed the foregoing Chapter 11 Plan via First Class Mail, postage prepaid, to the following:

Loren Padula
123 W. Riverside
Kellogg, ID 83837

Bank of America
4325 17th Ave. S
Fargo, ND 58125

Shoshone County
700 Bank St.
STE 110
Wallace, ID 83873-2356

/s/ Tyler S. Wirick _____   _____   _____   __
Tyler S. Wirick

**CHAPTER 11 PLAN OF REORGANIZATION OF NEW HOPE ASSEMBLY OF GOD, INC. - 7**